. 502 P.2d 1093

Paul TSAKIRIS, Appellant,

v.

PHOENIX UNION HIGH SCHOOL SYSTEM, John V. Fels, Ronald H. Warner, Donald F. Jackson, John T. Hansen, Stephen S. Jenkins, Jr., individually and as members of the Board of Education of the Phoenix Union High School System, and Gerald S. DeGrow, Superintendent of Education, Appellees.

No. 1 CA–CIV 2089.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 14, 1972.

Rehearing Denied Dec. 8, 1972.
Review Denied Jan. 9, 1973.

Tupper, Rapp, Salcito & Schlosser, P. A. by Daniel R. Salcito, Phoenix, for appellant.

Moise E. Berger, Maricopa County Atty. by Albert I. Firestein, Chief Civil Deputy County Atty., Phoenix, for appellees.

HAIRE, Chief Judge, Division 1.

The appellant teacher, Paul Tsakiris, filed a special action in the Maricopa County Superior Court seeking judgment requiring that the appellees (hereinafter sometimes collectively referred to as "school board") issue to him a teaching contract for the 1972–73 school year. The special action complaint also sought an order enjoining the appellees from proceeding with a hearing concerning the proposed dismissal of the appellant from his position as a teacher with the school district. The matters raised in the complaint were heard by the trial court on May 22, 1972, and the court's amended judgment was entered on June 26, 1972, denying all relief sought by the appellant in his complaint.

Appellant then filed this appeal, and, because of our concern as to the propriety of the trial court's judgment and the possibility of irreparable harm to appellant together with the probability of his incurring needless expense through a protracted hearing, we issued an order staying further proceedings by the school board pending the appeal. Upon motion of the parties, and pursuant to Rule 8(a), Rules of Procedure for Special Actions, 17 A.R.S., this Court ordered an acceleration of the appeal.

There is no dispute as to most of the pertinent facts. The appellant had been employed as a teacher by the defendant school district for 12 years, teaching in various schools within the district. On March 15, 1972, while serving as a teacher under a then current contract, he was *orally* advised by his principal that his contract would not be renewed for the 1972–73 school year. Two days later, on March 17, 1972, he was given a written document dated March 17, 1972, entitled "Notice of Dismissal and Date of Hearing".[1] This docu-

---

1. Apparently because this March 17, 1972 document was unsigned, a signed duplicate thereof was forwarded to and re- ceived by appellant on or about the 7th or 8th of April 1972.

ment set forth in some detail various alleged instances of incompetence, lack of professional judgment and insubordination, extending over a period of approximately 5 years. It further advised appellant that the administration had recommended to the school board that he "be dismissed from [his] position of teacher with the district"; that a hearing had been set for April 11, 1972, at which he might appear in person and by counsel; and further, confirmed his suspension as of the end of the school day, March 16, 1972.

The evidence introduced at the special action hearing in the superior court showed that appellant had been observed by the school administration since November 1971, regarding his performance as a teacher, and that the conduct relied upon for dismissal and non-renewal of his contract was not any one specific act, but rather an accumulation of matters. The principal testified that there was no specific conduct on appellant's part which so outraged her that she would demand his immediate dismissal, but it is clear that by the middle or latter part of February 1972, an administrative decision had been made to recommend his dismissal, or at least that his contract not be renewed.

## THE AUTOMATIC RENEWAL OF APPELLANT'S CONTRACT FOR THE SCHOOL YEAR 1972–73

■ The pertinent statute involved, A.R.S. § 15–252A provides in part as follows:

"A. Subject to the provisions of § 15–257, the contract of employment of a probationary or continuing teacher for a school year shall be deemed automatically renewed for the next ensuing school year, unless, on or before March 15 immediately preceding the ensuing school year, the school board, a member thereof acting on behalf of the board, or the superintendent of the school district, gives notice to the teacher of the termination of his contract."

The notice of termination referred to in § 15–252, subsec. A must be in writing and must be delivered personally to the teacher or sent to him by registered or certified mail bearing a postmark of on or before March 15th, otherwise the contract is renewed by operation of law. *See* A.R.S. § 15–252, subsec. B; School District No. 6 of Pima County v. Barber, 85 Ariz. 95, 332 P.2d 496 (1958); Palicka v. Ruth Fisher School District No. 90 of Maricopa County, 13 Ariz.App. 5, 473 P.2d 807 (1970). Prior to the amendment of various sections of the Teacher Tenure Act (A.R.S. Title 15, Chap. 2, Art. 3) in 1965, the statutes required only that written notice specifying the reasons for dismissal be given on or before March 15th in order to prevent automatic renewal, and any hearing, if requested by the teacher, could then be held subsequent to March 15th. However, the 1965 statutory amendments completely changed the procedure. As stated in Flowing Wells School District v. Stewart, 18 Ariz.App. 19, 499 P.2d 750 (1972):

"Under the new statute the process of termination begins with receipt by the teacher of a written notice specifying the cause or causes for the recommendation of dismissal. This puts the teacher on notice as to the exact reasons for dismissal so that the teacher can defend against them at the hearing which is now mandatory. There was no such provision in the old statute.

\* \* \* \* \* \*

"More importantly, under the old statute the board, upon coming to a conclusion after the hearing, was to render its decision '. . . *either affirming or withdrawing the notice of dismissal or termination . . .*', whereas the present statute requires that '[i]f the decision is to dismiss . . . . notice of termination shall be given as provided by §§ 15–252 and 15–253.' The old statute prescribed that the notice required by A.R.S. § 15–252 be given *prior* to the hearing. Under the new statute the notice is not given until *after* the hearing and this

notice serves as a written record for the purposes of appeal." (Emphasis in original). 499 P.2d at 753.

■ Appellant in this case did not receive any written notice whatsoever until March 17, 1972, nor was it mailed to him on or before March 15, 1972. Therefore, even under the old law he would have been entitled, as a matter of law, to a 1972–73 contract. *A fortiori*, he is entitled to a renewal under the new law, since obviously the school board did not, prior to the giving of the notice, hold a hearing as required by the provisions of the new law when a "continuing" teacher is involved.

■ In Count One of appellant's special action complaint he requested that the trial court issue an order directing the defendants (appellees) to issue to him a teaching contract for the 1972–73 school year within the Phoenix Union High School System. This relief should have been granted. There is no contention here that the alleged misconduct on appellant's part was concealed or unknown to appellees, or that it occurred so late in the school year that it became impossible for appellees to timely comply with the provisions of A.R.S. § 15–252 et seq. Rather, it is clear that appellees knew of appellant's alleged professional deficiencies well in advance of the statutory deadline, and apparently simply failed to take timely action to prevent an automatic renewal of his contract. The legal effect of this renewal by operation of law is the same as though appellees had thoroughly considered appellant's professional qualifications, and had then made a reasoned and deliberate decision to rehire him. His new contract for 1972–73 came into existence, and he could not be terminated except for cause occurring thereafter. *See* Splaine v. School District No. 122 of Spokane County, 20 Wash. 74, 54 P. 766 (1898). *Cf.* State of Arizona Personnel Commission v. Webb, 18 Ariz.App. 69, 500 P.2d 329 (1972). This is not to say that appellant's slate has been wiped clean

by the rehiring so that prior incompetency or acts of misconduct may not be considered *in conjunction with* incompetency or misconduct demonstrated in the future work of the appellant. As stated by the court in Palicka,[2] *supra:*

"To hold that the rehiring of a teacher with known deficiencies in her teaching methods precludes a later dismissal for these same deficiencies *when repeated* would mean that a young or inexperienced teacher would likely not be rehired on the hope that she might improve as she gained experience, because if she did not improve, the school board would be compelled to keep her regardless of her actions. The Teachers Tenure Act, A.R.S. § 15–251, et seq., was not intended to prevent school boards and administrators who rehire probationary teachers with known faults on the hope that they can assist the teacher in overcoming her deficiencies from later dismissing the teacher for cause in the future should their efforts fail. The Board is therefore not estopped and has not waived its defense that the teacher breached her contract and was dismissed for good cause consisting of the alleged deficiencies in her teaching occurring *after* the automatic extension of her contract on 15 March." (Emphasis added). 13 Ariz.App. at 8, 473 P.2d at 810.

*See also* State ex rel Cochrane v. Peterson, 208 Minn. 361, 294 N.W. 203 (1940); Powell v. Young, 148 Ohio St. 342, 74 N. E.2d 261 (1947).

Applying the above principles, here appellant was suspended by appellees and has not performed any services for appellees subsequent to the time that his contract for the 1972–73 school year was renewed by operation of law. Therefore, at this time, there cannot exist any possible cause arising from his performance as a teacher which can be combined with his alleged prior deficiencies or prior misconduct so as to form a basis for his dismissal or the ter-

2. The facts involved in Palicka are quite analogous to the facts in the instant case.

mination of his 1972–73 contract. Since appellant has long ago attained the status of a "continuing teacher" under Arizona's Teacher Tenure Act, his contract remains subject to the automatic renewal provisions of A.R.S. § 15–252 and hereafter he can only be terminated or dismissed for cause in accordance with the procedures set forth in A.R.S. §§ 15–252, 253 and 254.

## THE ATTEMPTED DISMISSAL HEARING SUBSEQUENT TO MARCH 15, 1972

The purpose to be accomplished by the dismissal hearing originally scheduled for April 11, 1972, is the subject of some dispute on appeal. From the language of the notice of dismissal—"The administration has recommended . . . that you be dismissed from your position of teacher with the district"—it would be logical to infer that what was intended was a permanent severance of the employer-employee relationship, including not only a discharge for the remainder of the then current term, but also for the coming year (1972–1973). Further support is given to this inference when consideration is given to the fact that the written notice followed by two days an oral notice of termination given on the statutorily significant date of March 15th.

█ In its brief on appeal the school board has taken the position that there are two separate contracts, and that the proposed April 11, 1972 hearing would have been concerned only with dismissal under the current contract for the remainder of that school year. On oral argument, appellees' counsel has retreated from this position somewhat in that he would not concede that a finding of good cause for dismissal as a result of that proposed hearing

would not in any way affect the validity of the 1972–73 contract. He attempts to avoid the question of the 1972–73 contract by saying that it is not now before the court. From a review of appellant's pleadings there can be no question but that, at the very least, the question of the issuance of the 1972–73 contract was squarely presented to the trial court, and by its denial of any relief, presented on appeal to this Court. In any event if we assume that one of the purposes of the scheduled hearing was to effect a termination of the 1972–73 contract, then, from what we have stated earlier in this opinion, it is obvious that the proposed hearing could not have accomplished that purpose.[3] Insofar as concerns the possible purpose of bringing about a dismissal for the balance of the 1971–72 term only, an interesting question has been presented as to whether appellees, by allowing appellant's contract to be automatically renewed for the 1972–73 school year, have precluded themselves from thereafter dismissing appellant from the remainder of his current contract. However, we do not find it necessary to answer this question. Here, the balance of the 1971–72 term has long since expired and the appellees have paid appellant for the balance of that term. No purpose would now be served in holding a hearing which could have no effect on the future relationship between these parties. In essence, we find this question now moot.

The judgment of the trial court is reversed and the matter remanded with directions to grant appellant the relief requested insofar as concerns the 1972–73 contract and for such further proceedings as might be appropriate and consistent with this opinion.

EUBANK and JACOBSON, JJ., concur.

---

3. We do not hold that misconduct on a teacher's part in the performance of his teaching duties subsequent to March 15th of the school year could not give the employing district the right to terminate the teacher's previously renewed contract for the coming year. That question is not presented by the facts involved in this appeal.