538 P.2d 1165

Howard TAFT, Jr., and Joann Taft, husband and wife, Appellants,

v.

Kenneth BEAN, Paul Sorenson, Howard Wren, Vern Seidel, Carol Breed, High School District No. One of Coconino County, Arizona, Appellees.

No. 1 CA–CIV 2726.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 14, 1975.

J. R. Babbitt, Flagstaff, for appellants.

J. Michael Flournoy, Coconino County Atty., by Stephen L. Verkamp, Sp. Deputy County Atty., Flagstaff, for appellees.

## OPINION

OGG, Presiding Judge.

Here we must determine the respective rights and obligations of the teachers and school boards under certain contracts entered into between the parties in this case.

The appellants/plaintiffs Joann Taft and Dolores Rossmeier (teachers) filed a class action in the trial court, seeking a declaratory judgment which would grant them a "double increment salary increase" under the terms of their teaching contracts with the appellees/defendants The Board of Trustees of Flagstaff High School District Number One and Flagstaff School District Number One. The teachers also seek damages for breach of contract.

The Boards and the teachers both filed motions for summary judgment. The trial court granted the Boards' motions and the teachers now appeal. The teachers rely upon a clause in their contracts with the Boards which reads:

"A teacher who attains tenure will be granted a double increment when he is employed for the fourth consecutive school year on a full time basis."

This contract provision was in all the teachers' contracts that were entered into with the Boards between March 15, 1969, and March 15, 1973. During this period of time all teachers who achieved tenure by obtaining employment for the fourth consecutive school year on a fulltime basis, were given a double increment salary increase under the terms of the contracts. The contracts offered the teachers by the Boards for the 1973–1974 school year did not contain the provision which would have granted a double increment salary increase for those teachers achieving tenure. The teachers signed their 1973–1974 contracts with the Boards but advised the Boards in writing that they were not waiving their rights to their claimed salary increases.

The teachers claim that this double increment raise upon attaining tenure was an integral part of the contracts and was binding upon the Boards; that under the provisions of §§ 15–251 and 15–252, A.R.S.,[1] the teachers automatically attained ten-

---

1. "§ 15–251. Definitions

In this article, unless the context otherwise requires:

1. 'Certificated teacher' means a person holding a certificate from the state board of education to teach in the schools of the state.

2. 'Continuing teacher' means a certificated teacher who is employed under contract in a school district as a full time classroom teacher, a school principal devoting not less than fifty per cent of his time to classroom teaching, or a supervisor of school children's activities, and whose contract has been renewed for his fourth consecutive year of such employment in the district.

3. 'Probationary teacher' means a certificated teacher who is employed under contract by a school district as a full time classroom teacher, school principal devoting not less than fifty per cent of his time to classroom teaching, or supervisor of school children's activities, and who is not a continuing teacher.

4. 'School board' or 'governing board' means the board of trustees of an elementary school district or the board of education of a high school district.

ure on March 15, 1973. The teachers contend that since the Boards did not adopt a salary schedule for the 1973–1974 school year until April 30, 1973, that those teachers who attained tenure on March 15, 1973 were entitled to the double increment raise provisions of their prior contracts. They allege that the Boards attempted to alter the double increment pay raise in violation of the contracts and § 15–257, A.R.S.:

> "§ 15–257. Limitations upon reduction of salaries or personnel
>
> "Nothing in this article shall be interpreted to prevent a school board from reducing salaries or eliminating teachers in a school district in order to effectuate economies in the operation of the district or to improve the efficient conduct and administration of the schools of the district, but no reduction in the salary of a continuing teacher shall be made except in accordance with a general salary reduction in the school district by which he is employed, and in such case the reduction shall be applied equitably among all such teachers. Notice of a general salary reduction shall be given each teacher affected not later than May 1 of the calendar year in which the reduction is to take effect. A teacher dismissed for reasons of economy or lack of pupils shall have a preferred right of reappointment in the order of original employment by the board in the event of an increase in the number of teachers or the reestablishment of services within a period of three years."

The teachers reason that since they were continuing teachers the failure of the Boards to give them a double increment salary increase under the new contract amounts to a selective illegal reduction of

their salaries and violates the provisions of § 15–257.

The Boards deny any breach of contract and assert that the salary provisions as adopted on April 30, 1973 for the 1973–1974 school year are the result of an entirely new and different method of establishing teacher salary schedules. Under this new schedule all teachers received a salary increase but the old provision for a double increment salary raise for teachers acquiring tenure was eliminated. It is the Boards' position that each year a new contract is made with all teachers and that the contract salary provisions of prior years have no relevance to the 1973–1974 school year contracts now in dispute.

It is our opinion that the Boards are legally correct and that the trial court did not err in granting the Boards' motions for summary judgment. A school board must have the opportunity each year to review the needs of the district before entering into new contracts with the teachers. The contract terms, including the amount of salary, are dependent upon the financial condition and needs of the school district. If we were to follow the reasoning of the teachers in this case the Boards would be severely hampered in any attempt to change the salary schedule from year to year. See *Carlson v. School District Number 6 of Maricopa County,* 12 Ariz.App. 179, 468 P.2d 944 (1970). Contrary to the teachers' contention that § 15–252 required all terms of their employment to be settled before March 15, 1973, we believe the specific statute governing the fixing of teachers' salaries is § 15–443, A.R.S. The pertinent part of this statute reads:

> "A. The board of trustees *may at any time* employ and *fix the salaries of teachers,* principals, janitors, attendance

---

5. 'Superintendent' means the superintendent of schools of a school district.

§ 15–252. Automatic renewal of contract of probationary or continuing teacher; notice of termination

Subject to the provisions of § 15–257, the contract of employment of a probationary or continuing teacher for a school year shall be deemed automatically renewed for the next ensuing school year, unless, on or before March 15 immediately preceding the ensuing school year, the school board, a member thereof acting on behalf of the board, or the superintendent of the school district, gives notice to the teacher of the termination of his contract."

officers, school physician, school dentist, nurses, and other employees necessary for the succeeding year. The contracts of all certified employees shall be in writing . . . " [Emphasis added].

It appears that a school board can fix salaries of a teacher at any time prior to the signing of the contract, subject to the limitations of. § 15–257, which requires that notice must be given not later than May 1 of the calendar year in which the reduction is to take effect if there is to be a general salary reduction.

In this case the salaries were adopted after proper notice on April 30, 1973, and under the new salary provisions there was an increase rather than a reduction in the salary of all teachers.

Affirmed.

DONOFRIO and FROEB, JJ., concur.