595 P.2d 1032

Sharon HAVERLAND, a married woman, Appellant,

v.

TEMPE ELEMENTARY SCHOOL DISTRICT # 3, Tempe Elementary School District # 3 Board, Rose Martinez, Stan Settles, William G. Payne, George M. Sanchez, Betty Hiett, Ralph Goitia, Superintendent, Appellees.

No. 1 CA–CIV 4603–A.

Court of Appeals of Arizona,
Division 1,
Department B.

April 3, 1979.

Rehearing Denied May 7, 1979.

Review Denied May 30, 1979.

James A. Ullman, P. C. by James A. Ullman, Phoenix, for appellant.

Charles F. Hyder, Maricopa County Atty. by Q. Dale Hatch, Deputy County Atty., Phoenix, for appellees.

## OPINION

OGG, Chief Judge.

In this appeal we must determine if the appellant/plaintiff, Sharon Haverland, a probationary teacher in the appellee/defendant Tempe School District, has the legal right to have her third-year probationary teacher's contract renewed. After two

years service as a probationary teacher, the school district refused to give Haverland an opportunity to secure status as a tenured teacher when it refused to renew her contract of employment. Haverland brought suit to force a renewal of her contract and in a separate count, she asked to be reimbursed for alleged unpaid back wages. The trial court denied Haverland any relief and dismissed her complaint. This appeal followed.

Haverland's appeal presents two questions for our review:

(1) Did the trial court err in not ordering the school district to renew Haverland's third year probationary teacher's contract?

(2) Did the trial court err in dismissing Haverland's claim for back wages?

We find no error and affirm.

## CONTRACT ISSUE

On January 6, 1978, Haverland received a letter from the superintendent of the school district which was designated as a "Preliminary Notice"; this letter indicated the school district was not pleased with her teaching performance. Among specific inadequacies mentioned were her failure to interact with students and her inability to establish good lines of communication with teachers and students. Haverland then received a second letter dated April 13, 1978 from the superintendent which notified her that the school district did not intend to renew her contract for the 1978–79 school year. This letter stated in substance that her contract was not to be renewed because of her failure to establish effective lines of communication and for the further reason she had failed to establish purposeful counseling sessions with students which resulted in meaningful classroom application.

From our study of the record, it appears the school district complied with the applicable statutes in the non-renewal of Haverland's contract.

The pertinent portions of A.R.S. § 15–252(A), which govern the renewal of a probationary teacher's contract, read:

[T]he governing board shall, between March 15 and May 15, offer a teaching contract for the next ensuing school year to each probationary teacher and a contract renewal for each continuing teacher under a contract of employment with the district for the current school year, unless, on or before *April 15,* the governing board, a member thereof acting on behalf of the board or the superintendent of the school district, gives notice to the probationary teacher of the board's intention not to offer a teaching contract . . . . (Emphasis added.)

The pertinent notice provision of this statute reads:

C.  Notice of the board's intention not to reemploy a probationary teacher shall be by delivering it personally to the teacher or by sending it by registered or certified mail *bearing a postmark of on or before April 15,* directed to the teacher at his place of residence as recorded in the school district records. (Emphasis added.)

Haverland argues that the school board should not be allowed to unilaterally violate a significant provision of its evaluation program which was adopted under statutory mandate and incorporated into Haverland's employment contract. Haverland acknowledges that she was notified on April 13, 1978 that her probationary teacher's contract would not be renewed and that such notice was within the April 15th statutory deadline as required by A.R.S. § 15–252. Haverland maintains, however, that under the school board's Teacher Evaluation Program the deadline for notification was April 10th, and that her notification of April 13th was untimely.

In 1974 the Arizona Legislature adopted A.R.S. § 15–268.[1] It required all school districts to develop a system of teacher

---

1.  A.R.S. § 15–268 reads:

A.  There shall be a system of assessment and evaluation of the performance of certified teachers within each school district of the state

which shall involve the development and adoption by each school district of objective assessment and evaluation guidelines for the improvement of instruction.

evaluation. Pursuant to the mandate of A.R.S. § 15–268, the school district established an Evaluation Time Line For All *Probationary* Teachers. The first evaluation covers a period from September 15 to October 15 and the Evaluation Time Line then proceeds to set specific times for five evaluations. After the 5th evaluation, the principal is to notify the superintendent by letter before the end of the second week in March if a probationary teacher's contract is not be be renewed. The board must then be notified at the first April board meeting that the superintendent recommends the non-renewal of the teacher's contract. Section 8.0 of the time line, relied upon by Haverland, sets the final time limitation. Section 8.0 of the Evaluation Time Line reads:

> Prior to *April 10,* the probationary teacher must be notified by the Superintendent, in writing, of the Board's intention that the contract will not be renewed the following year. (Emphasis added.)

Haverland argues that because the superintendent's letter giving notice of the non-renewal of her contract was dated April 13, 1978, the school district violated the April 10th time line and therefore her contract must be renewed for another year. Haverland bolsters her argument by noting her form contract contained a clause reading:

> Be it further agreed that rules and regulations prescribed or approved by the Board of Trustees shall be a part of this contract.

There is nothing in the record to indicate that Haverland was aware of or relied upon any specific deadline date for notification of her contract renewal.

The school district rests its case upon the statutes and the school district's written policy entitled "Professional Personnel—Separation" which reads:

1. The procedures for dismissal of teachers shall be those prescribed by the *Arizona Revised Statutes.*

While there are no cases clearly dispositive of this appeal, the parties are in general agreement relative to case law pertaining to this issue; they are not in agreement as to how such case law should be applied to the unique facts of this case. Our case law establishes that the terms of a teacher's contract are not necessarily confined to the provisions of the written document "but rather include any pertinent statutory provisions in effect at the time the agreement was entered into." *Carlson v. School District No. 6 of Maricopa County,* 12 Ariz.App. 179, 182, 468 P.2d 944, 947 (1970); *see Ryan v. Thomas,* 47 Ariz. 91, 53 P.2d 863 (1936). The terms of a teacher's contract may also include the rules and regulations of the school district. *Board of Trustees of Marana Elementary School District No. 6 v. Wildermuth,* 16 Ariz.App. 171, 492 P.2d 420 (1972). The Teacher's Tenure Act "is not a grant of power to the school districts, but rather constitutes a limitation on the power of the school district to freely contract in connection with the employment of its teachers for the following school year." *Carlson v. School District No. 6 of Maricopa County,* 12 Ariz.App. at 182, 468 P.2d at 947; *see Board of Education, Tucson High School District No. 1 v. Williams,* 1 Ariz.App. 389, 403 P.2d 324 (1965).

Haverland maintains that the case of *Pima College v. Sinclair,* 17 Ariz.App. 213, 496 P.2d 639 (1972) is directly in point and should be dispositive of this appeal. At first blush, the facts appear to be similar; however, the teacher in that case was working under a junior college contract where the provisions of the Teacher Tenure Law and A.R.S. § 15–252 have no application. We find little precedential value in that case as applied to the issue in the case before us.

We acknowledge there is ambiguity and conflict between the time limitations and procedures as set forth in A.R.S. § 15–252(A) and the school district's written policy guidelines on dismissal deadlines under the teacher evaluation program. It is further our opinion that the April 10th time line limit was part of a general time line directive established for the guidance of the school district administrators to insure compliance with A.R.S. § 15–252, relating to the

renewal of a probationary teacher's contract, and A.R.S. § 15–268, requiring a teacher evaluation program. The statutory authority for the teacher evaluation program does not purport to deal with dismissal deadlines but rather with a system to "involve the development and adoption by each school district of objective assessment and evaluation guidelines for the improvement of instruction." We do not believe the April 10th deadline established by the school district for the superintendent to notify the probationary teacher under the time guidelines of the teacher evaluation program can take precedence over the specific statute, A.R.S. § 15–252, that sets April 15th as the deadline for notification of the non-renewal of a probationary teacher's contract.

## BACK WAGES ISSUE

Haverland contends that she did not receive credit for her prior three years teaching experience. She states that her yearly salary as set out in her contract was $9,203.00 while she should have received the sum of $10,028.00 if the school district had given her credit for her prior teaching experience. Haverland states it is unfair and unreasonable for the school district to require prior teaching experience as a prerequisite for the counselor position and then not pay a salary commensurate with her experience. She had been employed as a home economics teacher for three years by the Isaac School District some eight years prior to her employment as a counselor with the Tempe School District.

A.R.S. § 15–443 gives authority to the school district to fix salaries. It states: "The Board of Trustees may at any time employ and fix the salaries of teachers . . . for the succeeding year." A school board may fix the salary of a teacher at any time prior to the signing of a contract and such boards have great discretion depending upon the financial condition and needs of the district in determining the salary schedule. *Taft v. Bean,* 24 Ariz.App. 364, 538 P.2d 1165 (1975).

 Haverland had worked for the school district for two years without making any claim for additional or back wages until she was notified her contract was not going to be renewed. Her signed contract called for a specific salary which was paid in full. The fact the school district under its guidelines could have paid more is immaterial. The fact is the school district has authority and discretion to enter into such a contract, and it fully paid the wages agreed to by both parties. Haverland had no cause of action for any additional salary payments.

Affirmed.

SCHROEDER, P. J., and JACOBSON, J., concur.