213 P.3d 222

James PACZOSA, a married man;  Tracy Faulkner, a married woman, Plaintiffs–Appellants,

v.

CARTWRIGHT ELEMENTARY SCHOOL DISTRICT NO. 83, a political subdivision of the state, Defendant–Appellee.

No. 1 CA–CV 08–0539.

Court of Appeals of Arizona, Division 1, Department A.

June 23, 2009.

74

Law Offices of Kevin Koelbel PC by Kevin Koelbel, Chandler, Co–Counsel for Plaintiffs–Appellants.

The Counters Firm by Lisa J. Counters, Maricopa, Co–Counsel for Plaintiffs–Appellants.

Law Office of William R. Hobson, PC, Chandler, Co–Counsel for Plaintiffs–Appellants.

DeConcini McDonald Yetwin & Lacy, PC by Denise M. Bainton, Tucson, Attorneys for Defendant–Appellee.

**OPINION**

BARKER, Judge.

¶ 1 James Paczosa ("Paczosa") and Tracy Faulkner ("Faulkner") appeal from a grant of partial summary judgment on their claims for relief under the Arizona Declaratory Judgment Act. Finding no genuine issue of material fact or error of law, we affirm the judgment.

### Facts and Procedural Background

¶ 2 The Cartwright Elementary School District No. 83 (the "District") employed Paczosa and Faulkner as school principals until 2007. Paczosa worked for the District for twenty-three years, serving the last nine as a principal, a position the Arizona Legislature classifies as an "administrator" because he was devoting less than fifty percent of his time to classroom teaching. *See* Ariz.Rev. Stat. ("A.R.S.") § 15–501(1) (2009). Before

becoming an administrator, Paczosa served as a tenured teacher in the District. Faulkner worked for the District for twenty-five years, and had served as an administrator for the last fifteen years. Like Paczosa, she had previously worked for the District as a tenured teacher.

¶ 3 Paczosa and Faulkner's respective 2006–2007 contracts with the District provided in relevant part:

Administrator shall be provided the administrative fringe benefits set forth in Exhibit A [Cartwright Administrator fringe benefits] for the fiscal year this Contract is in effect.

In accordance with A.R.S. § 15–503, the Board shall notify Administrator on or before April 15th if the Board or its authorized representative does not intend to offer Administrator a contract for the next fiscal year, unless an alternative notification date is authorized by State law. If the Board fails to provide timely notification of non-renewal, the Board shall be deemed to have extended the normal expiration date of this Contract for one (1) year.

Any subsequent amendment or addendum to this Contract must be in writing and signed by the parties.

¶ 4 Exhibit A to the 2006–2007 contracts also provided for fringe benefits, including retirement benefits:

Retirement Program as specified in the Meet and Confer Agreement is only applicable for employees employed *prior* to July 1, 2005. In addition, administrators may choose to receive retirement benefits over the pay periods of one, two, or three contract years immediately prior to termination of employment. These benefits include the retirement bonus, medical insurance payment, sick/annual leave buy back, and unused vacation days. Vacation days will only be bought back during the last full year of contracted employment. A minimum of 50 sick/annual leave days plus

vacation days must be available for the last contract year of the retirement agreement. These days may be prorated over the pay periods of the last contract year. All termination benefits will be computed based on the last completed full year contract. Any adjustments will be computed at termination of employment.

(Emphasis in original.)

¶ 5 In January 2007, Paczosa and Faulkner notified the District of their intent to use the Retirement Program benefit.[1] They requested that their incentive payments be spread over the last three years of their contracts, ending in 2010.[2]

¶ 6 On April 27, 2007, the District's Governing Board (the "Board") modified the fringe benefits. The fringe benefit changes incorporated the following language:

*Retirement Program as approved by the Governing Board is only applicable for employees who notified the Superintendent or his designee in writing by February 1, 2007 of his/her desire to participate in the retirement program.* Administrators must retire at the end of the 2007–08 year. Upon acceptance into the District Retirement Program, the administrator may choose to receive the 30% retirement bonus, health insurance cash settlement, and sick/annual leave and unused vacation days of all days over 50 (400 hours) in one of three payment options: 1) Evenly spaced payments added to their regularly bi-weekly paychecks[;] 2) A one-time payment in the final month; [o]r 3) Two equal separate payment[s], one in December, the second in the final month.

(Emphasis in original.)

¶ 7 On May 3, 2007, the District offered Paczosa and Faulkner contracts as principals for the 2007–2008 year that included these modified fringe benefits. The principals had until June 2, 2007 to accept; thereafter the contracts were deemed revoked by law. *See* A.R.S. § 15–503(D).

---

1. Plaintiffs claim that the superior court found that they had "accepted" this benefit. To the contrary, the court described the plaintiffs' allegation of acceptance in their application for the TRO and injunctive relief. This is not a finding of acceptance.

2. An employee is eligible for full retirement when his or her age and years of service total eighty. *See* A.R.S. § 38–711(27)(c) (Supp.2007).

¶ 8 Paczosa and Faulkner did not sign the proffered 2007–2008 contracts. On May 31, they asked the District whether they could return to work under their old contracts. They were told that the Governing Board had scheduled a June 6 meeting to discuss issues relating to Paczosa's and Faulkner's contracts and that the District's position was that the 2007–2008 contract offers would be revoked if not signed by June 2. On June 1, Paczosa and Faulkner told the District that they would not sign the 2007–2008 contracts and that they planned to continue working under the 2006–2007 contracts because the District had not served a notice of "non-renewal" before April 15, 2007.

¶ 9 Paczosa and Faulkner filed a declaratory judgment action against the District in Maricopa County Superior Court on June 1, 2007. They sought a declaratory judgment under A.R.S. § 12–1831 that their 2006–2007 contracts had been automatically extended, that they were entitled to the retirement benefits set forth in the 2006–2007 contracts, and that they had three-year contracts of employment.

¶ 10 On June 9, 2007, the Board met to discuss Faulkner's and Paczosa's employment. The Board declared Faulkner's and Paczosa's positions vacant "due to the fact that they have not signed and returned the contracts offered for school year 2007–2008." Four days after the meeting, Paczosa and Faulkner requested positions as tenured teachers in the event the superior court found the terminations of their administrative contracts valid.

¶ 11 On June 14, 2007, Faulkner and Paczosa filed an amended verified complaint, together with an Application for Temporary Restraining Order, Preliminary Injunction, and Order to Show Cause. They sought to restrain the Board from filling their positions until the Application for Preliminary Injunction could be heard.

¶ 12 The superior court denied the application, finding that the relevant issue was a pure question of law on which Faulkner and Paczosa were not likely to succeed at trial. Specifically:

> The relevant portion of A.R.S. § 15–503(D) sets two deadlines: April 15 for notice of "the board's intention not to offer a new contract," and May 15 for "offering a new contract." The former deadline is inapplicable as the board did not intend to refuse to offer Plaintiffs a new contract. It is undisputed that the board offered Plaintiffs a new contract before the later deadline of May 15. It did so on May 3. Another portion of A.R.S. § 15–503(D) provides that, where a new contract is offered, the offer must be accepted "within thirty days from the date of the written contract or the offer is revoked." It is also undisputed that no acceptance was communicated during this time period. The offer was, by operation of law, revoked thirty days after May 3, 2007.
>
> Plaintiffs have not proved that they will likely succeed at trial. In fact, the seemingly uncontradicted evidence indicates the opposite.

The superior court further found that Paczosa and Faulkner had not established irreparable injury, both sides would suffer similar hardships, and neither side had made a showing sufficient to reach a conclusion on the public policy issue.

¶ 13 The District then filed a verified answer, and the parties filed cross-motions for partial summary judgment on whether Paczosa and Faulkner were entitled to continued employment as tenured teachers. Following oral argument, the superior court granted summary judgment to the District. Applying A.R.S. § 15–501(2), the court ruled that Paczosa and Faulkner did not meet its definition of certificated teachers and thus were not entitled to tenured teaching contracts for the 2007–2008 school year. The court rejected Paczosa's and Faulkner's ensuing motion for reconsideration and entered a judgment containing findings of fact and conclusions of law. This appeal followed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## Discussion

1. *As a Matter of Law, Under the Terms of the Benefits Program the District Governing Board Had Authority to Prospectively Modify the Benefits Program from Year to Year.*

¶ 14 The superior court's judgment resolved all factual issues in favor of Paczosa

and Faulkner. On appeal, we review de novo the court's application of the law to those facts. *Trust v. County of Yuma*, 205 Ariz. 272, 274, ¶ 7, 69 P.3d 510, 512 (App.2003).

¶ 15 Paczosa and Faulkner contend that after they indicated their intent to participate in the Benefits Program ("Program") over the next three contract years, the Board had no authority to change the retirement benefit. We disagree. The 2006–2007 employment contracts were "for a term of one (1) year, effective July 1, 2006, through June 30, 2007" and stated that the "[a]dministrator has no legitimate expectancy of employment beyond the term indicated herein." Furthermore, paragraph six provided:

> Administrator shall be provided the administrative fringe benefits set forth in Exhibit A for the fiscal year this Contract is in effect. Administrator shall be provided the fringe benefits provided other certificated employees of the District, as adopted by the Board for the fiscal year this Contract is in effect. . . .

Consequently, the benefits of the 2006–2007 contracts were self-limited to one fiscal year. Because no employee had a legitimate expectation of employment beyond one year, neither could there have been a legitimate expectation of benefits beyond one year. The Board was entitled to change the fringe benefits offered for the next fiscal year.

¶ 16 Furthermore, A.R.S. § 15–502(A) provides that "[t]he governing board may at any time employ and fix the salaries and benefits of employees necessary for the succeeding year." *See Taft v. Bean*, 24 Ariz.App. 364, 366–67, 538 P.2d 1165, 1167–68 (1975) (holding that the governing board is entitled to adjust the terms of an employment contract up until the time it is offered under former A.R.S. § 15–443, now A.R.S. § 15–502). The terms of Paczosa's and Faulkner's contracts included any statutory provisions in effect when the contract was signed. *Haverland v. Tempe Elementary Sch. Dist. No. 3*, 122 Ariz. 487, 489, 595 P.2d 1032, 1034 (App. 1979); cf. 11 *Williston on Contracts* § 30:19,

at 206, 211 (4th ed. 1999) ("[C]ontractual language must be interpreted in light of existing law, the provisions of which are regarded as implied terms of the contract, regardless of whether the agreement refers to the governing law."), *quoted in Shaw v. Sargent Sch. Dist. No. RE–33–J ex rel. Bd. of Educ.*, 21 P.3d 446, 450 (Colo.Ct.App.2001). Significantly, the court in Taft interpreted the delay between the April 15 non-renew deadline and the May 15 deadline for offering a new contract as providing a district with the opportunity "to review the needs of the district before entering into new contracts with the teachers." 24 Ariz.App. at 366, 538 P.2d at 1167.

¶ 17 In this case, the Board changed the fringe benefits before May 3, 2007, the date the 2007–2008 contracts were offered, and before any benefits for the 2007 through 2010 contract years would be paid. Accordingly, the modification was prospective and supported by Arizona law and the terms of the fringe benefits program.[3] Given this conclusion, we need not address whether a school district is always at liberty to modify prospective fringe benefits programs based on the statutory scheme alone.

### 2. As a Matter of Law, Paczosa's and Faulkner's Applications for Retirement Benefits Did Not Create Three–Year Contracts.

¶ 18 Paczosa and Faulkner argue that by notifying the District of their intent to participate in the Program beginning in the 2007–2008 school year, and by indicating their intent to choose the three-year option for receiving benefits under the Program, they entered into a three-year employment contract with the District. They maintain that the January "acceptance" of the District's "offer" of retirement benefits created a three-year contract that would take effect starting with the 2007–2008 school year. This argument is not well taken.

---

**3.** On appeal, Paczosa and Faulkner argue for the first time that the Board "approved" their contracts on April 11, 2007. We decline to address this argument because it was not raised in the superior court. *See CDT, Inc. v. Addison, Roberts*

*& Ludwig, C.P.A., P.C.*, 198 Ariz. 173, 178, ¶ 19, 7 P.3d 979, 984 (App.2000) (holding that the court of appeals can only reverse a grant of summary judgment based upon theories, arguments, and facts properly presented to the trial court).

¶ 19 An enforceable contract re-quires an offer, acceptance, and consideration, along with terms specific enough to enable the parties to determine their obligations. *K–Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (App.1983). The contract's terms must be "sufficiently clear so that one can state with certainty the obligation involved." *Malcoff v. Coyier*, 14 Ariz.App. 524, 526, 484 P.2d 1053, 1055 (1971). Where there is doubt, the parties' intent to be bound may be determined by the language as well as "the situation, acts and conduct of the parties, and from the attendant circumstances." *Id.*

¶ 20 Several factors dictate against an interpretation that the fringe benefits document, coupled with Paczosa's and Faulkner's January benefits applications, created three-year employment contracts with the District. First, those documents contain insufficient terms for an enforceable employment contract. The only terms that could be gleaned from the documents are that there would be benefits and that employment would last for three years. The documents contain none of the terms found in the one-year contract under which Paczosa and Faulkner were employed for the 2006–2007 school year, including salary and duties.

¶ 21 Second, language in the fringe benefits document is inconsistent with its functioning as an employment contract. The provision allowing participants "to receive retirement benefits over the pay periods of one, two, or three contract years"—not to receive "one, two, or three-year contracts"—contemplates one-year employment contracts that are separate and apart from the retirement benefits.

¶ 22 Third, the benefits document stated that the Program applied to all administrators, not just Paczosa and Faulkner. If the document and benefits applications together created enforceable employment contracts, it would do so for all District administrators who chose to participate in the Program. The District cannot have intended such a result. Moreover, such an interpretation would allow multiple-year employment contracts for administrators who are statutorily limited to one-year contracts.

¶ 23 Finally, the retirement benefits application contains nothing to support the claim that it functioned as an "acceptance" of an "offer." The form is titled an "application." By signing the form, the applicant "requests" benefits. Further, the application form itself explains that the District requires notification of this request because the applicant's decision "directly affects the budget." All of this language indicates that the form was designed largely to aid the District in its budgeting plans for the 2007–2008 school year.

¶ 24 For these reasons, we find that no three-year employment contract existed between Appellants and the District.

3. **The Board's Failure to Notify Appellants by April 15, 2007 that New Contracts Would Not Be Offered Did Not Automatically Extend the 2006–2007 Contracts.**

¶ 25 Paczosa and Faulkner also argue that the Board failed to "non-renew" their 2006–2007 contracts by April 15, 2007, and that this resulted in the automatic extension of those contracts. Arizona statute provides, in relevant part:

> On or before May 15 the governing board shall offer a contract for the next school year to each certified administrator ... who is in the last year of his contract unless, on or before April 15, the governing board ... gives notice to the administrator ... of the board's intention not to offer a new contract.

A.R.S. § 15–503(D). The relevant portion of Paczosa's and Faulkner's 2006–2007 contracts provides as follows:

> *Non–Renewal of Contract.* In accordance with A.R.S. [§ ] 15–503, the Board shall notify Administrator on or before April 15th if the Board ... does not intend to offer Administrator a contract for the next fiscal year.... If the Board fails to provide timely notification of non-renewal, the Board shall be deemed to have extended the normal expiration date of this Contract for one (1) year.

¶ 26 Paczosa and Faulkner read these provisions to mean that the only way the District could offer a modified contract for the subsequent school year would be to "non-renew" an administrator's employment by the April 15 deadline and then offer a new contract. This interpretation is incorrect.

¶ 27 A reference to contract "renewal" is not found in the statutes relating to employment of administrators. However, it does appear in the statute relating to employment of certificated teachers, which provides in relevant part:

> [T]he governing board shall, between March 15 and May 15, offer to each certificated teacher who has been employed by the school district for more than the major portion of three consecutive school years and who is under contract of employment with the school district for the current year a contract renewal for the next ensuing school year unless on or before May 15 the governing board ... gives notice to the teacher of the board's intent not to offer a contract and to dismiss the teacher...."

A.R.S. § 15–538.01(A). However, nothing in this provision indicates that "contract renewal" in this context means anything more than the offer of "a contract."

¶ 28 Likewise, nothing in Paczosa's and Faulkner's contracts or the statute relating to employment of administrators—neither of which imposes a contract-renewal requirement—indicates the administrators' existing contracts must roll over from year to year. Section 15–503 explicitly contemplates that a school board will offer an administrator "a new contract." In accordance with that statute, the contract at issue also references the Board's intent to offer "a contract." The difference between the two provisions is that the 2006–2007 contract, unlike the statute, provides for what will happen if the Board does not intend to offer a contract for the next school year but fails to notify the administrator prior to the April 15 deadline: in that case, the expiration date of the administrators' existing contract will be extended for one year.

¶ 29 Here, the reason the Board did not "non-renew" Paczosa's and Faulkner's contracts prior to April 15 was because it did intend to offer each of them "a contract" for the 2007–2008 school year. Consistent with that intention, the Board offered Paczosa and Faulkner contracts prior to the May 15 statutory deadline; thus, the contingency provision in the 2006–2007 contracts extending their expiration date in the event the Board failed to offer a new contract before May 15 was never triggered. Likewise, the contractual provision requiring notice of non-renewal of "a contract," not "*this* contract," was never triggered as there was an intent to offer a contract. We therefore agree with the trial court's conclusion that the Board's intent to offer "a contract" made the April 15 deadline inapplicable. For this reason, we need not address whether the District can rely on statute to void a contradictory contract term.

¶ 30 Paczosa and Faulkner rely on *Tsakiris v. Phoenix Union High Sch. Sys.*, 18 Ariz.App. 416, 502 P.2d 1093 (1972), for the proposition that a school board's failure to notify an employee of non-renewal prior to the statutory deadline automatically extends the employee's existing contract. This reliance is misplaced because the applicable statute in *Tsakiris*, providing for automatic renewal of a teacher's contract if the board failed to notify the teacher of termination prior to the statutory deadline, did not apply to administrators and no longer exists. *Id.* at 418, 502 P.2d at 1095. Regardless, there was no failure to notify of a non-renewal as a new contract was offered.

### 4. As a Matter of Law, the Board Did Not Terminate Paczosa's and Faulkner's Employment.

¶ 31 Paczosa and Faulkner further contend that the Board unlawfully terminated their employment because it failed to "non-renew" their contracts by April 15, 2007. This argument fails for reasons described in the preceding section. The reason Paczosa and Faulkner are not employed by the District is because they failed to sign and return the 2007–2008 contracts within thirty days. *See* A.R.S. § 15–503(D). The District did not terminate their employment.

¶ 32 Faulkner and Paczosa argue that A.R.S. § 15–503(D) does not apply because

neither was an administrator "who is in the last year of his contract." This argument is premised on the assumption that the failure to "non-renew" on April 15 extended the 2006–2007 contracts. We reject that assumption for reasons previously explained, and agree with the superior court that A.R.S. § 15–503(D) applies.

**5. As a Matter of Law, Paczosa and Faulkner Are Not Entitled to Be Offered Contracts as Tenured Teachers, and Based on Their Failure to Accept the Offered Contracts Had No Property Interest that Entitled them to Due Process.**

¶ 33 Notwithstanding their refusal to sign the proffered 2007–2008 administrator contracts, Paczosa and Faulkner argue that the District was required to return them to their previous positions as tenured teachers. Prior to becoming principals, Paczosa and Faulkner had served as teachers in the District for fourteen and ten years, respectively. They argue that taking positions as administrators did not strip them of their tenure, that tenure is a property interest, and that the District accordingly could not take it from them without due process. These arguments fail on the facts of this case.

¶ 34 Paczosa and Faulkner base their claim to tenured teaching positions on *Wolfe v. Sierra Vista Unified School District No. 68*, involving an administrator who had obtained "continuing status" prior to entering administration. 150 Ariz. 221, 222, 722 P.2d 389, 390 (App.1986). When he returned to full-time teaching, the district offered a probationary teaching contract, claiming it had no power to offer a continuing contract. *Id.* Wolfe signed the contract, started teaching under that contract, and sought a declaratory judgment that his status was that of a continuing teacher. *Id.* The parties in Wolfe agreed that he met the definition of "continuing teacher" as defined by the statute then in effect, but the district argued that his continuing status had been severed by his years spent as an administrator. *Id.* The court rejected this argument and refused to find

anything in the statute to support such an interpretation. *Id.* *Wolfe* stands for the proposition that an administrator who is re-employed as a full-time teacher and meets the "continuing teacher" definition is entitled to resume continuing teacher status.

¶ 35 The current statutes relating to re-employment of teachers do not include a "continuing teacher" provision. *See* A.R.S. §§ 15–536, –538.01. Instead, the statutes provide for the guaranteed re-employment of a "certificated teacher who has been employed by the school district for more than the major portion of three consecutive school years...." A.R.S. § 15–538.01(A). This status and the prior "continuing" status are commonly referred to as "tenure." *See Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. Of Governors*, 184 Ariz. 419, 426, 909 P.2d 486, 493 (App.1995). The statutes do not provide tenure for administrators. *See* A.R.S. § 15–503.

¶ 36 Although the statutes relating to tenure have changed, the concept remains, and the principle set forth in *Wolfe* continues to apply. Like the plaintiff in Wolfe, Paczosa and Faulkner had obtained tenure prior to becoming administrators. The similarities end there. In *Wolfe*, the district voluntarily offered the administrator a contract to return to the classroom. Here, no such offer was made, and *Wolfe* cannot reasonably be read to hold that a district is obligated to return an administrator to the classroom. Moreover, because Paczosa and Faulkner were not under contract as teachers during the 2006–2007 school year, nor were they offered such contracts for 2007–2008, they did not meet the "certificated teacher" requirement of § 15–538.01(A) at any relevant time.

¶ 37 We therefore find no basis for Paczosa's and Faulkner's claims of tenure. Furthermore, Arizona law does not give administrators a property interest in continued employment. *Wallace*, 184 Ariz. at 429, 909 P.2d at 496. For these reasons, we find no merit in the argument that Paczosa and Faulkner had a property interest that entitled them to due process.[4] Accordingly, we

---

4. Paczosa and Faulkner rely upon *Vanelli v. Reynolds School District No. 7*, but their reliance is misplaced. 667 F.2d 773 (9th Cir.1982). In that case, the school district and board dismissed

need not address the amount of pay to which Paczosa and Faulkner would be entitled under A.R.S. § 15–544 if they returned to teach at the District.

### Conclusion

¶ 38 We affirm the superior court's rulings and judgment. In the exercise of our discretion, we decline to award attorneys' fees on appeal to the District under A.R.S. § 12–341.01(A) (2003).

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, and JOHN C. GEMMILL, Judge.

a high school teacher in the middle of a one-year contract. *Id.* at 775. The Ninth Circuit found the teacher had been deprived of a property interest in continued employment. *Id.* at 777. In this case, Paczosa's and Faulkner's employment was not disrupted by a termination and each was offered a contract for the following year.