468 P.2d 944

James **CARLSON**, Donald Noller and Barbara Domke, on behalf of themselves and on behalf of all of the other teachers of School District No. 6 of Maricopa County, Arizona, who are similarly situate, Appellants,

v.

SCHOOL DISTRICT NO. 6 OF MARICOPA COUNTY, Arizona, a political subdivision of the State of Arizona, Appellee.

No. I CA–CIV 700.

Court of Appeals of Arizona,
Division 1,
Department B.

May 6, 1970.
Rehearing Denied June 12, 1970.
Review Denied July 14, 1970.

Joe F. Walton, Barry Leverant, James T. Bialac, Phoenix, for appellants.

Robert K. Corbin, Former Maricopa County Atty., Moise Berger, Maricopa County Atty., by James P. Cunningham, Special Deputy County Atty., Albert Firestein, Deputy County Atty., Phoenix, for appellee.

EUBANK, Presiding Judge.

This appeal requires the court to determine whether or not there is statutory authority which allows a school district (appellee herein, and defendant in the trial court) to unilaterally reduce the compensation set forth in written employment contracts between that school district and its employee teachers (as a class, appellants herein and plaintiffs in the trial court).

Although both appellants and appellee in their statements of the question presented refer only to A.R.S. § 15–257, a provision in the teachers' tenure act, it is apparent from the arguments in both briefs and from the trial court's findings, that appellee also relies upon the provisions of A.R.S. Title 15, Chapter 12, dealing with the regulation of school district budgets as justifying the trial court's finding. In arriving at our conclusions, we will therefore consider and discuss not only the effect of A.R.S. § 15–257 on these written contracts, but also the budgetary provisions relied upon by appellee.

This action commenced with the filing of an action for a declaration of the teachers' rights under written contracts with the school district. After trial to the court, findings, amended findings and judgment were entered in favor of the school district in essence determining that the school district had statutory authority to unilaterally

reduce the amount of compensation contracted for by the parties. The teachers have appealed from this determination.

The pertinent facts are as follows:

On April 14, 1966, the defendant school district adopted a salary schedule reflecting various salary raises for the teachers of the district. Thereafter, and prior to July 5, 1966, contracts for the ensuing school year reflecting the scheduled raises were signed by the parties. These contracts are the subject of this action.

On or about July 1, 1966, the defendant school district adopted a proposed annual budget, the operating expense portion of which was adequate to pay the contracted salary raises of the plaintiff teachers together with all other contemplated expenses accruing under that portion of the budget designated as operating expenses. The proposed budget as adopted on July 1, 1966, exceeded the six per cent budget increase limitation of A.R.S. § 15–1201 and 1203.[1] Such excess over the six per cent increase limitation required the approval of the Maricopa County Board of Supervisors under procedures prescribed by A.R.S. § 15–1245, before such excess could become effective. The proposed annual budget of July 1, 1966, was considered at a hearing of the Maricopa County Board of Supervisors on July 5, 1966. Some district taxpayers were present at the hearing and protested the proposed budget. At the conclusion of the hearing, the Board of Supervisors neither approved nor disapproved the proposed budget, but rather took the matter under advisement and suggested that the parties concerned meet and attempt to compromise their differences.

Following this action of the Board of Supervisors on July 5, 1966, the trustees of the defendant school district met and by a majority vote amended that portion of the budget relating to operating expenses by deducting the sum of $172,002.50 from the line of the budget creating the only availa-ble funds to make payment of the contracts for classroom teachers' salaries. This deduction left a sum sufficient to make payment of the contracted salaries of the continuing teachers (plaintiffs) of the school district, but was insufficient to also pay the salaries of 37 additional new teachers deemed necessary by the school district to be employed for the ensuing school year. However, such reduction would still have allowed the school district to employ eight additional new teachers at its adopted minimum salary of $5,000.00 each. This tentatively approved revised budget for operating expenses would still exceed the six per cent allowable increase and therefore required the approval of the Maricopa County Board of Supervisors. The revised budget was re-submitted to the Supervisors and was approved by them on July 8, 1966.

Thereafter a written notice was given to all teachers to the effect that commencing January 1, 1967, in the middle of the teaching contract and fiscal year, their salaries as set forth in their written contracts would be decreased by a specified amount. There is no question but that these decreases were general in nature and did not discriminate against any particular teacher or teachers, and further that the Board of Trustees of the defendant school district acted openly and in good faith concerning the above-mentioned matters.

No question is or can be raised concerning the authority of the defendant school district to enter into the written contracts here involved. A.R.S. § 15–443 expressly authorizes such contracts for the succeeding year and requires that they be in writing. Since the school district has authority to enter into such contracts, ordinary principles of contract law apply and both parties are bound by the terms of their contract and neither can unilaterally disregard the same with impunity. See generally McQuillin, Municipal Corporations, 3rd Edition (Revised), § 46.15, pp.

1. A.R.S. § 15–1201 (Laws of 1961, Ch. 15 § 1); A.R.S. § 15–1203 (Laws of 1959, Ch. 90 § 5, amended Laws of 1961, Ch. 15 § 2). All statutory references are to those in existence during the 1966–1967 school year.

**182**

775–778 (1963); 47 Am.Jur.Schools, §§ 48 and 115, pp. 329 and 377. However, the "terms" of such a contract are not necessarily confined to the provisions of the written document which the parties demoninate as their "contract", but rather include any pertinent statutory provisions in effect at the time the agreement was entered into. Ryan v. Thomas, 47 Ariz. 91, 96, 53 P.2d 863 (1936); School District #6 of Apache County v. Whiting, 52 Ariz. 207, 211, 79 P.2d 959 (1938); School District No. 69 of Maricopa County v. Altherr, 10 Ariz.App. 333, 339, 458 P.2d 537 (1969).

Neither of the parties here involved actually quarrel with the above-stated principles. The real quarrel concerns the interpretation and application to the facts of statutes claimed applicable by the defendant school district.

■ We consider first the issues relating to A.R.S. 15–257, which reads as follows:

"§ 15–257. Limitations upon reduction of salaries or personnel

Nothing in this article shall be interpreted to prevent a school board from reducing salaries or eliminating teachers in a school district in order to effectuate economies in the operation of the district or to improve the efficient conduct and administration of the schools of the district, but no reduction in the salary of a continuing teacher shall be made except in accordance with a general salary reduction in the school district by which he is employed, and in such case the reduction shall be applied equitably among all such teachers. Notice of a general salary reduction shall be given each teacher affected not later than May 1 of the calendar year in which the reduction is to take effect. A teacher dismissed for reasons of economy or lack of pupils shall have a preferred right of reappointment in the order of original em-

ployment by the board in the event of an increase in the number of teachers or the reestablishment of services within a period of three years."

The defendant school district relies upon this statutory provision as a grant of authority enabling it to unilaterally reduce compensation specified in a contract with a teacher, notwithstanding the fact that the parties have already entered into a written contract specifying the amount of compensation to be paid. Based upon the language used in the statute, and its context within the teachers' tenure act (A.R.S. §§ 15–251 through 15–261 inclusive), we are unable to agree with this contention.

■ First, in construing A.R.S. § 15–257 it is important to keep in mind that the teachers' tenure act (of which § 15–257 is a part) is not a grant of power to the school districts, but rather constitutes a limitation on the power of the school district to freely contract in connection with the employment of its teachers for the following school year. Board of Education, Tucson High School District No. 1 v. Williams, 1 Ariz.App. 389, 393, 403 P.2d 324 (1965). § 15–251 sets forth certain pertinent definitions of terms used in the act; § 15–252 provides that the existing contract of teacher employees shall be deemed automatically renewed for the next ensuing school year unless on or before March 15th the schoolteacher is given a notice of termination; § 15–253 prohibits the termination of the contract of employment of a "continuing teacher"[2] without first giving written notice specifying the cause for dismissal; §§ 15–254 and 15–255 specify certain procedural requirements and appeal rights relating to a hearing concerning the giving of the notice of termination referred to in § 15–253; § 15–256 gives authority for the suspension of the teacher by the board under certain circumstances notwithstanding tenure; § 15–258 prohibits a teacher from resigning after signing and

2. "Continuing teacher" is expressly defined in the statute, A.R.S. § 15–251, subsec. A, par. 2, and, subject to certain other qualifications, means a certified teacher whose contract has been renewed for his fourth consecutive year of employment in the district.

returning his contract, and makes such resignation (unless approved by the district) an "unprofessional act" subject to disciplinary action; § 15–260 expressly retains in the legislature the right to modify, amend or repeal the tenure act; and A.R.S. § 15–261 deals with the applicability of the tenure act in certain district-to-district-teacher-transfers.

There evolves from these provisions of the tenure act a statutory scheme designed to limit in certain respects the power of the school board to contract with its teacher employees pursuant to A.R.S. § 15–443, supra. The board's power relating to contracting with these teachers for the ensuing school year is limited both as to the time within which such contracting must occur and as to the right to refuse to rehire for the ensuing school year. However, nowhere in the above listed provisions relating to the ensuing year's contract is there any express limitation on the district's otherwise existing power to reduce the teacher's compensation for the ensuing year. In our opinion, A.R.S. § 15–257 was intended to negate any inference that these other provisions of the tenure act imply any such limitation. However, at the same time, this section by its own express provisions does restrict such power as to prevent its use in discriminating against an individual teacher and thereby indirectly circumventing the other limitations set forth in the act. See Johnson v. Board of Education, 101 Ariz. 268, 419 P.2d 52 (1966); Board of Education, Tucson High School District No. 1 v. Williams, supra.

Looking at the actual language used in § 15–257, it is important to note that the section does not contain any affirmative grant of power to the district—its language is in the negative. It does not purport to give any additional powers to the district. However, as noted above, it does impose some restrictions on, or take away some of the powers which in the absence of this provision the district would possess—that is, the power to freely contract with each individual teacher concerning the salary to be paid that teacher under the new contract for the ensuing year. Because of the restrictive language, the proffered contracts for the ensuing year cannot contain any reduction in the salary of a continuing teacher unless part of a general reduction applied equitably among all such teachers. Further, unless such contracts are proffered or notice of such reduction given prior to May 1st, no reduction can be made. The May 1st limitation was undoubtedly set so that the continuing teacher would have an opportunity to either accept or reject the proposed reduction in the proffered contract, and if unacceptable, still have time for the solicitation of other employment for the ensuing school year. It is important to note that the protections afforded by the provisions of the tenure act relating to future employment are essentially unilateral. Subject to the conditions in the statute, the school district is bound to tender re-employment, but the teacher employee is not bound to accept unless and until he signs a written contract.[3] If such is the case, then once such contract is signed, the teacher's salary rights ought to be determined by reference to that written contract and the applicable statutes.

In summary, through the provisions of A.R.S. § 15–257 the legislature has made certain that the statutory tenure of *employment* (right to be re-employed for the ensuing school year) afforded by the provisions of the tenure act is not extended by the same statutes to an absolute right to have an unreduced salary for the ensuing

3. A.R.S. § 15–258 provides as follows:
"§ 15–258. Resignation restrictions; violation; penalty
A probationary or continuing teacher shall not resign after signing and returning his contract, unless the resignation is first approved by the school board. A teacher who resigns contrary to this section shall be deemed to commit an unprofessional act, and upon request of the school board shall be subject to such disciplinary action, including suspension or revocation of certificate, as the state board of education deems appropriate." As amended laws 1960, Ch. 127 § 16.

school year. Subject to statutory restrictions, including that set forth in § 15–257, the school district is left free to work out by contract such salary arrangements with its teacher-employees as the parties may agree upon. However, once such contractual arrangements have been entered into, § 15–257 does not purport to grant any subsequent power to the school district to unilaterally change its obligations thereunder. Thus, § 15–257 cannot afford any support for the breach of contract which the plaintiff teachers allege herein.

■ The school district next contends that the written contract of employment which the parties entered into necessarily included the Arizona statutes regulating school district budgets and expenditures. Reliance is placed upon the provisions of A.R.S. § 15–1202, subsec. F (Laws 1960, Chapter 127, § 49)[4] which prohibits expenditures for purposes not included or in an amount in excess of that provided in the budget. Further reliance is placed upon the provisions of A.R.S. § 15–1203, supra, pertaining to the six per cent annual limitation on school budget increases.[5]

If there were a factual predicate for the school district's reliance on these budgetary provisions, there might possibly be some merit in the school district's position. However, here the trial court in its amended findings of fact found that in the revised budget approved by the Board of Supervisors, there remained a sufficient fund for the payment of the classroom teachers' salaries so that the school district could have met the obligations of its contracts re-employing the plaintiff teachers for the succeeding year. In fact, even after honoring in full the obligations of the written contracts, the district would have had sufficient additional funds remaining in the budget to hire eight additional teachers at its adopted minimum salary schedule.

Lest there be some misconception, it must be kept in mind that the statutory prohibitions against expenditures in excess of budgeted amounts have reference to the budget form specified by A.R.S. § 15–1201, supra, footnote 1. Under this budget form there is no detailed specification of the individual teacher's salary. Rather, a total amount is set forth for all salaries within a specified category such as "classroom teachers". The statutory budget prohibitions are directed against total expenditures in excess of the "lined" amount provided for such category. Isley v. School District No. 2 of Maricopa County, 81 Ariz. 280, 305 P.2d 432 (1956). Thus, it is clear that under the revised budget as finally adopted, the school district budget laws, even if considered as a part of the

---

4. A.R.S. § 15–1202, subsec. F (Laws 1960, Chapter 127, § 49) reads as follows:
   "F. No expenditure shall be made for a purpose not particularly itemized and included in the budget, and no expenditure shall be made, and no debt, obligation or liability shall be incurred or created in any year for any purpose itemized in the budget in excess of the amount specified for such item, irrespective of whether the district at any time has received or has on hand funds in excess of those required to meet the expenditures, debts, obligations and liabilities provided for under such budget, except pursuant to the provisions of section 15–1245."

5. A.R.S. § 15–1203 (Laws 1959, Chapter 90, § 5 as amended Laws 1961, Ch. 15 § 2) reads as follows:
   "§ 15–1203. Limitation of expenditures; exception; manner of exceeding

That part of the proposed budget designated for operational expenses which is in excess of the six per cent increase permitted by § 15–1201 shall not be adopted except upon the filing of the petition and conforming to the procedure prescribed in § 15–1245. The board of supervisors shall fix a day for hearing on the petition within not less than ten days after the first publication of notice thereof and shall cause a notice thereof to be published at least once in a newspaper of general circulation within the school district, but if no newspaper is published therein, publication shall be made in a newspaper published in the nearest district within the county, of the time and place when the application will be heard and determined. The cost of publication shall be a charge against the school district.

contracts in question, did not in any way prohibit or render impossible the performance of these contracts to the full extent of the school district's obligations thereunder.

. ▮ A final policy contention is advanced by the school district, primarily in connection with the six per cent budget limitation provisions of A.R.S. § 15–1203, supra, footnote 5. As previously indicated, on the first proposed budget submitted by the district to the Board of Supervisors there had been some taxpayer protests at the hearing, and, although the Board of Supervisors did not take action by way of expressly disapproving the proposed budget, it did take the matter under advisement and suggested that all parties meet to see if some compromise could be worked out. The evidence shows that the school district board then met and considered alternate proposals and decided to submit a revised proposed budget cutting the total for classroom teachers and other categories.

Upon the advice of the County Attorney's Office that it could legally do so, the school district took the position that in order to meet this reduction it was not necessary to eliminate or appropriately reduce its plans for the hiring of additional teachers, but rather, that it could in the exercise of its discretion reduce the compensation payable to the plaintiff teachers notwithstanding the fact that written contracts had already been entered into. Counsel for the school district has not cited any authority in support of this proposition, and in our opinion it has no merit. Here we are dealing with written contracts which were not only within the authority of the school district to make at the time made, but, in addition, such contracts were required by specific statutory mandate. See A.R.S. §§ 15–443, 15–251 et seq., supra. If one of the plaintiff teachers had decided to breach this contract after signing the same, then by the express terms of the statute, he would be deemed to have committed an unprofessional act, and upon request of the school board would be subject to such disciplinary action, including suspension or revocation of certificate, as the State Board of Education might deem appropriate. The revocation of a teacher's certificate is equivalent to banning him from the teaching profession. In view of such stringent sanctions against the breach of a contract by one party, we cannot believe that the law will permit breach by the other party in its discretion as a policy-making body for the district, especially under the facts and circumstances of this case.

It might be contended that the decision which we arrive at leaves school districts desiring to give salary increases in an impossible situation, that by reason of the statutory budget procedure there is always a possibility that the subsequent budget incorporating funds for such salary increases might not be approved through no fault of the school district. If this is of real concern, we see no reason why adequate provisions may not be incorporated into the written contract with the teacher which would condition these salary increases upon the occurrence of such subsequent events as the parties may agree upon. See Phelps v. School Dist. No. 109, Wayne County, 302 Ill. 193, 134 N.E. 312 (1922); 47 Am.Jur.Schools, § 121, p. 383.

We hold that the plaintiff teachers were entitled to receive compensation for their services in accordance with their written contracts. This action was originally filed in the trial court prior to the time such services would have been rendered by the plaintiffs and prior to any actual breach by the school district. Therefore no evidence was presented concerning the amounts due or the procedures which might have been followed by plaintiffs to protect their claims against the school district. We express no opinion as to whether or not any statutory claim procedures are or are not applicable.

The judgment of the trial court is reversed and the matter remanded for such further proceedings as might be necessary to establish the rights of the parties herein.

HAIRE and JACOBSON, JJ., concur.