609 P.2d 73

Lucy MISH, Appellant,

v.

TEMPE SCHOOL DISTRICT NO. 3; The Board of Trustees; Lawrence D. Woodford, President of the Board, Individually; Stan Settles, Clerk of the Board, Individually; William G. Payne, Individually; Rose E. Martinez, Individually; George M. Sanchez, Individually; Members of the Board, Appellees.

No. 1 CA–CIV 4123.

Court of Appeals of Arizona,
Division 1,
Department A.

Jan. 15, 1980.

Rehearing Denied March 6, 1980.

Review Denied March 25, 1980.

Law Offices of Steven B. Yarbrough and Glynn W. Gilcrease, Jr. by Glynn W. Gilcrease, Jr., Tempe, for appellant.

Wentworth & Lundin by John E. Lundin and Stephen W. Myers, Phoenix, for appellees.

OPINION

DONOFRIO, Judge.

Lucy Mish, plaintiff-appellant, sued the Tempe School District No. 3 and the individual members of its Board of Trustees, defendants-appellees (hereinafter collectively referred to as School District) for breach of contract arising out of her employment relationship with the School District. Summary judgment was granted in favor of the School District from which Mish appeals.

At the outset we wish to discuss summary judgments in general. In *Choisser v. State ex rel. Herman*, 12 Ariz.App. 259, 469 P.2d 493 (1970), this court articulated the prerequisites that must be established to obtain a summary judgment.

There are two prerequisites that must be met before entry of summary judgment is appropriate: (1) the record brought to the trial court's attention must show that

there is no genuine dispute as to any material fact and that only one inference can be drawn from those undisputed material facts; and (2) that based on the undisputed material facts the moving party is entitled to a judgment as a matter of law.

*Id.* at 261, 469 P.2d at 495. The text of 16 A.R.S. Rules of Civil Procedure, rule 56(c) defines the parameters of the record considered in a motion for summary judgment to include pleadings, depositions, answers to interrogatories, admissions on file and affidavits. The standard for reviewing grants of summary judgment was recently restated by the Arizona Supreme Court in *Wisener v. State*, 123 Ariz. 148, 149, 598 P.2d 511, 512 (1979):

> In reviewing the granting of a summary judgment, the evidence must be viewed in a light most favorable to the losing party, with that party being given the benefit of all favorable inferences that may be reasonably drawn from the evidence. If, when viewed in this manner, reasonable men could reach different conclusions as to whether there is a genuine issue as to any material fact, the judgment must be reversed. *Livingston v. Citizen's Utility, Inc.*, 107 Ariz. 62, 481 P.2d 855 (1971). That is to say, the litigants are entitled to a trial when there is the slightest doubt as to the essential facts. *Geiler v. Arizona Bank*, 24 Ariz. App. 266, 537 P.2d 994 (1975).

Stated conversely, if the evidence is viewed in the above-described manner and reasonable men could not differ with the conclusion that there is no genuine issue of material fact, summary judgment must be affirmed [1] if under the undisputed material facts the party is entitled to a judgment as a matter of law.

We have reviewed the entire record in this case, including all pleadings and discovery, and we will set forth the facts as they appear undisputed in the record or in a light most favorable to appellant.

In the fall of 1971 Mish became a part-time consulting computer programmer for the School District. The School District decided that a full-time, nine-month computer programmer was desired and discussed the position with Mish. She expressed her interest in having a teacher's contract, in working as a teacher for the protection afforded (we assume she meant tenure) and in having the option of transferring to a classroom position. On January 18, 1972 Mish was hired for the position under a probationary teacher's contract.[2] Her understanding was that although she was hired under this contract her assignment would be computer programming and other undefined services—not classroom teaching. The record is barren of any representations having been made to Mish that the use of the teacher's contract would entitle her to tenure or any similar type of protection or that she had the right to be transferred to a classroom teaching position at her election. The School District's payroll system in January of 1972 had one scale

---

1. 16 A.R.S., Rules of Civil Procedure, rule 56(c) provides that
   "[T]he judgment sought *shall be rendered* forthwith if the pleadings, deposition, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Emphasis supplied)

2. That contract provided in material part:
   *PROBATIONARY TEACHERS CONTRACT*
   THIS CONTRACT, made the 18th day of January, A.D., 1972, between LUCY J. MISH and the BOARD OF TRUSTEES OF TEMPE SCHOOL, DISTRICT NO. 3
   3205 South Rural Road, Tempe, Arizona

   In the County of Maricopa, State of Arizona: WITNESSETH, that the said LUCY J. MISH who holds a legal certificate to teach in the public elementary schools of Arizona during the period of this contract, hereby agrees to teach such grade, grades or subjects in the Tempe Elementary Schools as the Superintendent of said schools may assign . . . commencing on the 24th day of January, 1972, through the 1971–1972 school year, said school year to be determined by the BOARD OF TRUSTEES. And to well and faithfully perform the duties of teacher in said school, according to law and the rules legally established and adopted for the government thereof. . . .

of pay for certified employees[3] and another scale of pay for classified employees.[4] To be eligible for payment on the certified pay scale the employees were required to hold a professional certificate, however, they were not required to in fact teach or perform the services their certification permitted them to perform. There is uncontroverted evidence in the record that the School District, at the time in question here, used the probationary teacher's contract in hiring several non-teaching (although certified) employees. This practice was used as an accommodation to these employees because it entitled them to advanced and higher salary increments than those paid on the classified scale and permitted more lenient work schedules. It also was a matter of convenience to the School District in fixing salaries for new positions.

Mish worked as a computer programmer and researcher under probationary teacher's contracts for the balance of the 1971–1972 school year and for the three successive school years of 1972–1973 through 1974–1975.[5] She continued in this position during the 1974–1975 school year, but no written contract was entered between the parties. In October 1975 Mish was advised for the first time by the School District that she would not get another teacher's contract, however, the School District paid her that year the same salary and increases out of the classified payroll that she would have received under a teacher's contract. The record fails to explain how the School District could pay Mish the same salary from the classified payroll but there is no dispute that in fact it was paid.

In July of 1976 the School District offered Mish a 12-month computer programmer position for the 1976–1977 school year with a salary of $13,586.00 to be paid from the classified payroll. (Her previous salary was between $11,500 and $12,000 for a nine-month position.) Mish rejected the offer of this classified position because of her belief that when the School District failed to give her notice of its intent not to offer her a teaching contract or renewal of her probationary teacher's contract for the 1975–1976 school year prior to April 15, 1975 she became a continuing tenured teacher by operation of law and that her contract was again renewed the same way for the 1976–1977 school year.

On August 19, 1976 Mish reported for work but was told that she did not have a job because she declined to accept the classified computer programmer position. Thereafter Mish brought this action demanding, *inter alia*, that she be reinstated as a continuing teacher.

Although it is undisputed that Mish was never a classroom teacher on a regular basis, appellant contends that she is a tenured continuing teacher within the Arizona Teachers Tenure Act, A.R.S. § 15–251 *et seq.* In support of this contention she points to an extensive series of facts: That she was required to obtain an Arizona teaching certificate as a condition precedent to employment; that to obtain the required certificate she took and completed five hours of college credit and three hours of government; that on one occasion her pay was withheld because she did not have the teaching certificate and that her pay would not have been withheld if she was not a teacher; that although she was hired as a teacher, the School District could assign her to computer programming and research, which they did; that on one occasion during her employment she taught a special education class for two weeks, something only a teacher could do; that she from time-to-time instructed teachers and students on the use of video materials; that she tested pre-kindergarten children in a screening program on a number of occasions; that she made a statement to a school official that she should have tenure because she worked under a teacher's contract for 3½ years which statement was not refuted by the

---

3. Those who possessed a professional certification, e. g., teaching certificate.

4. Employees without professional certification.

5. The contracts used in the years subsequent to the 1971–1972 school year were substantively similar to the one excerpted in footnote # 2.

school official; that she received the same salary and pay increments as teachers; that her vacations coincided with teachers rather than non-teachers; that she received credit for university credit like other teachers and was required to take qualifying courses in the same fashion as teachers; that she attended "teacher only" meetings, conferences and training; and that she would not have been employed under probationary teacher's contracts if she was not a teacher.

As previously stated, the overall controlling issue before this court is whether the trial court erred in granting summary judgment in favor of the School District. We hold that summary judgment was proper for the fundamental reason that Mish, as a matter of law, was not entitled to tenure under the Arizona Teachers Tenure Act, A.R.S. § 15–251, *et seq.*

The School District had authority to contract with Mish and the relationship between them is governed by the contract and the Arizona Teachers Tenure Act.

No question is or can be raised concerning the authority of the defendant school district to enter into the written contracts here involved. A.R.S. § 15–443 expressly authorizes such contracts for the succeeding year and requires that they be in writing. Since the school district has authority to enter into such contracts, ordinary principles of contract law apply and both parties are bound by the terms of their contracts and neither can unilaterally disregard the same with impunity. [Citations omitted] However, the "terms" of such a contract are not necessarily confined to the provisions of the written document which the parties de-

nominate as their "contract", but rather include any pertinent statutory provisions in effect at the time the agreement was entered into. [Citations omitted]

*Carlson v. School District No. 6 of Maricopa County*, 12 Ariz.App. 179 at 181–2, 468 P.2d 944 at 946–7 (1970).

[1] The Arizona Teachers Tenure Act governs the relationship between a teacher and the employing school district. On one hand, a teacher is not entitled to tenure unless he or she complies with the requirements of the Act and, on the other hand, the Act is a limitation on the School District's power to contract by requiring it to renew contracts of teachers unless it complies with the act.[6]

[I]t is important to keep in mind that the teacher's tenure act . . . is not a grant of power to the school districts, but rather constitutes a limitation on the power of the school district to freely contract in connection with the employment of its teachers for the following school year.

*Id.* at 182, 468 P.2d at 947.

In *Kaufman v. Pima Junior College Governing Board*, 14 Ariz.App. 475, 484 P.2d 244 (1971), the Act has been characterized as follows:

[T]he Arizona Teachers Tenure Act. A.R.S. § 15–251 et seq., represents a general scheme by the legislature to insure tenure for certain teachers. In particular, tenure is assured a "continuing teacher" which is defined as certified teacher who is employed, or a school principal devoting not less than 50% of his time to classroom teaching, or, a supervisor of school children's activities whose contract

---

6. § 15–252. Offer of contract to probationary or continuing teacher; acceptance; notice to probationary teacher of intention to terminate

A. Subject to the provisions of §§ 15–253, 15–254, 15–255 and 15–257, the governing board shall . . . offer a teaching contract for the next ensuing school year to each probationary teacher and a contract renewal for each continuing teacher under a contract of employment with the district for the current school year, unless on or before April 15, the governing board, . . . . the superintendent of the

school district, gives notice to the probationary teacher of the board's intention not to offer a teaching contract or renewal thereof or in the case of a continuing teacher, unless such teacher has been dismissed pursuant to this article.

\* \* \* \* \* \*

C. Notice of the board's intention not to reemploy a probationary teacher shall be . . . to the teacher . . . on or before April 15, . . . . The notice shall incorporate a statement of reasons for not reemploying the teacher.

\* \* \* \* \* \*

has been renewed for its fourth consecutive year of such employment in the district. A.R.S. § 15–251, subsec. A, par. 2. The other type of teacher under the Act is the "probationary teacher" under A.R.S. § 15–251, subsec. A, par. 3 defined as a certified teacher who is employed under a contract by a school district as a full time classroom teacher, school principal devoting not less than 50% of time to his classroom teaching, or, supervisor of *school children's activities, and who is not a continuing teacher.* This teacher has no tenure but does have the benefit of automatic contract renewal under A.R.S. § 15–252.

Id. at 476–77, 484 P.2d at 245–46. The determination of whether a teacher is or has become tenured is based solely upon the individual coming within the A.R.S. § 15–251(A)(2) definition of a "continuing teacher." [7] To become a tenured continuing teacher one must satisfy all the elements of the following test:

1. The person must hold a certificate from the state board of education to teach in the schools of this state; and

2. The person must be employed full time by contract in either a school district or accommodation school; and

3. The person must be one of the following:

(a) Employed and working as a full-time classroom teacher; or

(b) A school principal devoting not less than fifty percent of his time to classroom teaching; or

(c) A supervisor of children's activities; and

4. The person's contract has been renewed for his fourth consecutive year of such employment in the district.

There is no doubt that the appellant did not and cannot satisfy this test. While Mish did hold an Arizona teaching certificate, was a full-time employee under contract with a school district, arguably had her contract renewed for four consecutive years during her employment with the School District,[8] the undisputed facts in the record conclusively show that she did not fulfill the third part of the above-described test. Mish was not a full-time classroom teacher or a school principal devoting fifty per cent of her time to classroom teaching or a supervisor of children's activities.

■ Appellant also contends that the School District should be estopped to deny that she is a teacher entitled to tenure. We disagree and hold that estoppel will not lie against a school district in the determination of whether an individual is entitled to tenure under the Arizona Teachers Tenure Act.

■ As a general rule estoppel will not lie against a school district. In *Board of Tr. of Marana El. Sch. Dist. No. 6 v. Wildermuth,* 16 Ariz.App. 171, 173, 492 P.2d 420, 422 (1972), this court said:

7. § 15–251. Definitions

A. In this article, unless the context otherwise requires:

1. "Certificated teacher" means a person holding a certificate from the state board of education to teach in the schools of the state.

2. "Continuing teacher" means a certificated teacher who is employed under contract in a school district as a full-time classroom teacher, a full-time classroom teacher employed under contract in an accommodation school, a school principal devoting not less than fifty per cent of his time to classroom teaching, or a supervisor of *school children's activities,* and whose contract has been renewed for his fourth consecutive year of such employment in the district.

3. "Probationary teacher" means a certificated teacher who is employed under contract by a school district as full-time classroom teacher, school principal devoting not less than fifty per

cent of his time to classroom teaching, or supervisor of school children's activities, and who *is not a continuing teacher.*

8. Appellant contends that the failure of the School District to timely notify her of its intention not to offer her a renewal of her probationary teacher's contract or offer her a teaching contract automatically renewed her probationary contract for her fourth and fifth years of employment under A.R.S. § 15–252 thereby vested her with the status of a tenured or continuing teacher. Although arguable we wish to note that Mish's probationary teacher's contract was not automatically renewed under A.R.S. § 15–252 because under the undisputed facts she was not a "probationary teacher" within the A.R.S. § 15–251(A)(3) definition. See footnote # 7.

The general rule is that the doctrine of estoppel *in pais* will not lie against a state or its agencies when acting in its character as a sovereign. *Kerby v. State of Arizona*, 62 Ariz. 294, 157 P.2d 698 (1945). Further, an *ultra vires* act of a state official ordinarily will not bind the state through the doctrine of estoppel. *Columbia Investment Co. v. M. M. Sundt Construction Co.*, 1 Ariz.App. 124, 400 P.2d 132 (1965).

This statement was made in clarification and disapproval of dictum in *School District No. 69 of Maricopa County v. Altherr*, 10 Ariz.App. 333, 458 P.2d 537 (1969), that appeared to say a school district could never be bound by estoppel.

While it is an open question when estoppel may lie against a school district as an exception to the general rule, one cannot obtain tenure by estoppel. Tenure emanates solely from the statute and one must substantively fulfill the requirements of the act to become tenured. The school districts do not have the power to extend tenure to any individual let alone to one who does not meet the clear requirements of the Tenure Act. Therefore, it is clear that the School District could not bestow Mish with tenure indirectly by estoppel when it had no power to bestow tenure directly.

Our holding that Mish was not a continuing teacher and thereby not tenured is consistent with the purposes of the Arizona Teachers Tenure Act. One of the purposes of the Act, to insulate *teaching professionals* from arbitrary dismissal, has been alternatively stated:

> [T]he act should be given liberal interpretation to carry out its obvious purpose to give protection to the *teaching profession* from arbitrary dismissals and reduction in salary . . . . (Emphasis supplied)

*Board of Education, Tucson H. S. Dist. No. 1 v. Williams*, 1 Ariz.App. 389, 393, 403 P.2d 324, 328 (1965).

> [T]he broad purpose of teacher tenure is to protect *worthy instructors* from enforced yielding to political preferences and to guarantee to such teachers employment *after a long period of satisfactory service* regardless of the vicissitudes of politics or the likes or dislikes of those charged with the administration of school affairs. (Emphasis supplied)

*School District No. 8, Pinal County v. Superior Court*, 102 Ariz. 478, 480, 433 P.2d 28, 30 (1967). Another clear purpose of the Act never expressly articulated before is to provide an extensive period of time for a school district to scrutinize the performance of a teacher before tenure is vested and thereby weed out teachers who are not of the desired caliber and quality. If an individual functioning in a non-teaching administrative position could become a tenured teacher without having been observed in the role of teacher over a period of time it could thwart the purpose of the Act to insure quality of the teachers entrusted with the grave responsibility of educating our youth.

Affirmed.

WREN, P. J., Department A, and CONTRERAS, J., concur.