IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 83-111

WILLIAM G. HARRIS,

     Petitioner and Respondent,

         v.

GENEVIEVE BAUER,
Superintendent of Schools,
Yellowstone County, Montana,
sitting for Sonja Spanning,
et al.,

     Respondents and Appellants.

**FILED**

NOV 17 1983

ORDER

*Ethel M. Harrison*
CLERK OF SUPREME COURT
STATE OF MONTANA

PER CURIAM:

The opinion in this cause which was handed down November 14, 1983 is hereby amended. The following portion of the opinion, which constitutes the last seven lines of the original opinion, is hereby stricken:

> "Here, the delay will exceed that in Yanzick because the School Board must now make an initial determination as to the propriety of the discharge procedures used and a proper award to respondent.

> "We remand to the District Court with instructions to remand this cause to the County Superintendent for further proceedings consistent with this opinion."

In place of the stricken language the following is inserted:

> "Here, the total time prior to a final determination may exceed that in Yanzick.

> "We remand to the District Court with instructions in turn to remand to the County Superintendent for a determination of the lawfulness of the discharge procedures used by the Livingston County School Board against Mr. Harris, as required under the petition originally filed with the County Superintendent."

DATED this 17th day of November, 1983.

Chief Justice

1

_John Conway Harrison_

_Freel J. Wiber_

_A. C. Gullbrandson ._

_John C. Sheehy_
Justices

No. 83-111

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

WILLIAM G. HARRIS,

Plaintiff and Respondent,

vs.

GENEVIEVE BAUER, Superintendent of Schools,
Yellowstone County, Montana, Sitting for
Sonja Spannering, et al.,

Respondents and Appellants.

_____

Appeal from:  District Court of the Sixth Judicial District,
              In and for the County of Park
              Honorable Nat Allen, presiding Judge

Counsel of Record:

    For Appellants:

        Karl Knuchel argued, Livingston, Montana

    For Respondent:

        Berger Law Firm, Billings, Montana
        Arnold Berger argued, Billings, Montana

    For Amicus Curiae:

        Charles E. Erdmann argued, Helena, Montana

_____

Submitted    September 20, 1983

Decided      November 14, 1983

Filed: NOV 14 1983

*Ethel M. Harrison*

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Genevieve Bauer, Yellowstone County Superintendent of Schools sitting for the Park County Superintendent, issued an order on December 15, 1981 finding that William Harris was not entitled to tenure. Harris appealed to the State Superintendent of Public Instruction, who affirmed the County Superintendent's order. Harris then appealed to the District Court of Park County, which overturned the prior administrative determinations, found that Harris had tenure, and ordered him reinstated with back pay. This appeal was taken from the District Court's judgment. We affirm the judgment in part and remand the cause for further proceedings.

The principal issue on appeal is whether a teacher, who was certified by the State of Montana, hired under a teacher's contract and worked as a school psychologist, obtained tenure.

Respondent Harris received a B.S. degree in 1962, was certified to teach science, biology, chemistry, guidance and counseling, and was employed as a teacher in Gardiner, Montana from September, 1963 until May, 1972. Respondent returned to college, majored in psychology, and received a M.A. in Education in 1972. He applied for the position of school psychologist in Livingston in January, 1973 and was hired for the 1973-74 school year under an emergency authorization. He worked for Livingston School Districts Nos. 1 and 4 until 1981, when he was purportedly discharged.

Respondent's employment contracts were preprinted forms with blanks for name, dates, salary and signatures. These contracts were variously titled: "Teacher Contract," "Teacher's Contract" and "Individual Teacher's Contract." Paragraph (1) of the 1973-74 and 1974-75 contracts provided:

2

> "That said School District hereby agrees to employ the said teacher to teach, or to render related professional services, as and where assigned by the Board of Trustees of the Livingston Public Schools . . .."

Paragraph (1) of the contracts signed for the 1975-76 through 1980-81 school years provided:

> "That said School District hereby agrees to employ the said teacher to teach, within his areas of certificate endorsement, or to render related professional services, as and where assigned by the Board of Trustees of the Livingston Public Schools . . .."

The County filed annual reports with the State Office of Public Instruction listing respondent's "Assignment-Subject(s)" as Elementary Counselor (1973), Special Education, Resource Room (1974), School Psychologist (1975, 1977, 1979, 1980), and Special Education, School Psychologist (1978).

Between 1963 and 1980, respondent maintained teacher certification. In January 1973, the Office of the State Superintendent (now the Office of Public Instruction and referred to as OPI) conditionally approved Harris' psychological testing credentials. In 1981 when professional certification became available, OPI informed Harris by letter that school psychologists who had practiced continually since 1975 were eligible for initial certification without meeting specific standards. Harris had served as school psychologist since 1973.

From March, 1975 to August, 1981, respondent also worked half-time as Director of Special Education for the Livingston School Districts. He received school notices addressed to "ALL TENURED Special Education Teachers." The Livingston School District made contributions on respondent's behalf to the Teacher's Retirement Fund from 1973 through 1980.

3

On March 20, 1981 Patrick Boyer, Director of Special Services, filed a report for the 1980-81 school year evaluating respondent's work as "less than adequate" and stating Boyer was "reluctant to make a firm recommendation for his retention as School Psychologist in the District." By contrast, Boyer's reports from preceding school years were highly complimentary. Mr. Boyer wrote respondent on April 8, 1981 that he was "relieved of all duties as a school psychologist," but that he was required "to observe teacher's hours" until his contract expired on June 5, 1981.

On April 14, the School Board voted to terminate respondent's services as school psychologist. He was notified of his dismissal by letter dated April 15, 1981. At that time, respondent's contract term for the 1980-81 school year had not yet expired.

Respondent appealed the Board's notice of dismissal to the County Superintendent, then to the State Office of Public Instruction. Based upon stipulated facts, both agencies determined that respondent served as a specialist in an ancillary, non-teaching, support staff capacity and was not entitled to receive tenure. The District Court found that respondent was a tenured teacher, discharged without compliance to statutory procedures. The court ordered respondent reinstated as a teacher, compensated for the unexpired portion of his "automatically renewed teacher's contract" for the 1981-82 school year, and paid to date on the automatically renewed 1982-83 contract.

Section 20-1-101(20), MCA defines a teacher as:

"... any person, except a district superintendent, who holds a valid Montana teacher certificate that has been issued by the superintendent of public instruction under the provisions of this title and the policies adopted by the board of public education and who is employed by a district as a member of its

4

instructional, supervisory, or administrative staff . . .."

In 1979, the Legislature amended section 20-4-106, MCA (formerly section 75-6006, R.C.M. 1947) to distinguish specialists and teachers for purposes of certification. In both the 1978 and 1979 codes, subsection 20-4-106(1), MCA specifies five classes of teacher certificates. The 1979 amendment added the following language to section 20-4-106, MCA:

> "(2) The superintendent of public instruction shall issue specialist certificates, and the board of public education shall adopt specialist certification policies. The specialist certificate may be issued to an otherwise qualified applicant who has the training, experience, and license required under the standards of the board of public education for the certifications of a profession other than the teaching profession."

The Compiler's Comments state the legislative purpose of distinguishing specialist and teacher certificates:

> "The intent of this bill is to establish a certification category for non-teaching school personnel. It is not intended to restrict or authorize the practice of any profession outside the public school system.
>
> "Specialist certificates may be developed in areas such as school psychology or school nursing." Section 20-4-106, MCA, Annot. Compiler's Comments.

In 1979, the Legislature also made a distinction between teachers and specialists for purposes of tenure, as well as for certification. Section 20-4-203, MCA (1978) (formerly section 75-6103, R.C.M. 1947) exempted only district superintendents from the protection of tenure. The current tenure statute as enacted in 1979 provides:

> "Whenever a teacher has been elected by the offer and acceptance of a contract for the fourth consecutive year of employment by a district in a position requiring teacher certification except as a district superintendent or specialist, the teacher shall be deemed to be reelected from year to year thereafter as a tenure teacher at the same salary and in the same or a comparable position of employment as that provided by the last executed

contract with such teacher . . ." Section 20-4-203, MCA (emphasis added).

Six of respondent's employment contracts predate these 1979 statutory changes distinguishing specialists and exempting specialists from teacher tenure. No such distinctions existed in 1973, when respondent began working for Livingston School Districts Nos. 1 and 4.

As a general rule of statutory construction, "retroactive effect is not to be given to a statute unless commanded by its context, terms or manifest purpose." Falligan v. School Dist. No. 1 (1917), 54 Mont. 177, 179, 169 P. 803, 804. The 1979-80 and 1980-81 contracts must be read in conjunction with section 20-4-203, MCA, set forth directly above. However, former law applies to Harris' contracts for school years 1973-74 through 1978-79.

At the time that respondent executed an employment contract for the 1976-77 school year, the tenure statute required three factors to be met before tenure could be granted: (1) that the employee be "a teacher;" (2) that a contract "for the fourth consecutive year of employment by a district" be executed; and (3) that the teacher be serving "in a position requiring teacher certification." Section 20-4-203, MCA.

Section 20-1-101(20), MCA defines "teacher" as a person "who holds a valid Montana teacher certificate" and "who is employed by a district as a member of its instructional, supervisory, or administrative staff . . .." This definition has not changed since enactment in 1971. Harris held valid Montana teacher certificates and was employed by the Livingston School Districts as a member of the administrative staff. Respondent was a teacher. The first element of the tenure test is satisfied.

6

Harris' fourth consecutive employment contract with the Districts was for the 1976-77 school year. Thus, the second element of the tenure test is likewise satisfied.

The third and final element of the test is whether Harris served "in a position requiring teacher certification." During each of the four consecutive school years between 1973-74 and 1976-77, Harris' contracts required him to maintain teacher certification. The 1977-78 contract additionally required him to register a copy of the certificate with the Park County Superintendent of Schools. Although neither the OPI or the County Superintendent required school psychologists to file teacher certificates, Harris was by contract specifically required to do so. He satisfied this contractual obligation by maintaining and filing valid teacher certificates for each school year he was employed. As defined by his contracts, Harris' position required teacher certification.

The fact that the Livingston School Districts continued to execute "Individual Teacher's Contracts" that required respondent to hold a valid teacher certificate, rather than a specialist certificate in 1980 and 1981, is additional evidence that Harris was actually a teacher assigned by the Board to render related professional services. We conclude, as did the District Court, that the contracts of the parties are clear and unambiguous, and the contact language expresses the intention of the parties.

In Sorlie v. School Dist. No. 2 (Mont. 1983), 667 P.2d 400, 40 St.Rep. 1070, a classroom teacher with 20 years experience accepted an administrative position as Coordinator of Intermediate Education in 1978 and was discharged in 1980. This Court noted that "[t]here is no separate tenure for

7

administrative personnel." 667 P.2d at 403, 40 St.Rep. at 1073. We concluded that:

" . . . tenure acquired as a teacher applies to a subsequent administrative position. Section 20-1-101(20), MCA, clearly provides that a teacher and administrator are comparable positions for the purpose of acquiring tenure. If this were not so, an educator could lose tenure rights by accepting a promotion to an administrative position." 667 P.2d at 403, 40 St.Rep. at 1073-74 (emphasis added).

Both Mrs. Sorlie and Mr. Harris became certifiable as specialists in 1979; however, both earned tenure prior to the 1979 change in the law.

In Sibert v. Community College of Flathead Cty. (1978), 179 Mont. 188, 587 P.2d 26, we held that an employee who did not hold a position requiring teacher certification was not authorized to receive tenure. Neither Sibert nor Harris were required to perform any classroom teaching duties. As Manager of Services, however, Sibert was not required to maintain valid teacher certification and, therefore, was not authorized to receive teacher tenure. Sibert, 179 Mont. at 191-92, 587 P.2d at 28. Harris, on the other hand, was required by contract to maintain teacher certification.

Amicus Curiae, Montana School Boards Association, Inc., cites Mish v. Tempe School Dist. No. 3 (Ariz. App. 1980), 125 Ariz. 258, 609 P.2d 73, a case with facts strikingly similar to this case. In Arizona as in Montana, tenure is achieved with the fourth consecutive contract. Mish was a certified teacher, hired under a probationary teacher's contract in 1972 and assigned to work as a computer programmer for the District. The School District "used the probationary teacher's contract in hiring several non-teaching (although certified) employees" so that they would qualify for higher salaries and more lenient work schedules, and also as "a matter of convenience" to the School District. Mish, 609

8

P.2d at 75. Like Harris, Mish was required to maintain a valid teacher certificate as a condition of employment. She attended "teacher only" conferences and tested children. Mish contended that the District hired her as a teacher, but assigned her to render the related duties of computer programming and research.

The Arizona Appellate Court held that Mish failed to satisfy Arizona's 4-prong test for tenure, the third element of which provides:

> "3. The person must be one of the following:
> (a) Employed and working as a full-time classroom teacher; or
> (b) A school principal devoting not less than fifty percent of his time to classroom teaching; or
> (c) A supervisor of children's activities."
> Mish, 609 P.2d at 77.

The Court held that Mish did not fulfill this part of Arizona's test.

No such element is contained in Montana's tenure statute. Montana's 3-prong test (section 20-4-203, MCA) is distinguishable from Arizona's 4-prong test (A.R.S. §15-251). A "continuing teacher" in Arizona is comparable to a "tenure teacher" in Montana. The Arizona Teachers Tenure Act, A.R.S. §15-251(A)(2), specifically defines a continuing teacher as a certified teacher whose contract has been renewed for the fourth consecutive year of employment as a full-time classroom teacher, a school principal devoting not less than fifty per cent of his time to classroom teaching, or a supervisor of children's activities. Montana's teacher tenure law, section 20-4-203, MCA, contains no such qualification or prerequisite, nor does section 20-1-101(20), MCA, which defines "teacher." Although the facts in Mish and Harris are similar, the differences between Arizona and Montana law render Mish valueless as precedent here.

9

The fact that the Livingston School Districts contributed on respondent's behalf to the Teachers' Retirement System has little, if any, probative value. Members of that system include persons other than teachers. Section 19-4-302, MCA.

We hold that respondent was employed for the fourth consecutive year in 1976-77, served as school psychologist, and was required by contract to maintain teacher certification in order to serve in that position. Based on the specific language contained in respondent's employment contracts, the manner in which the parties dealt with each other over the course of nine years, and the fact that the School Board continued to employ respondent as a teacher after the Board became empowered on July 1, 1979 to employ a specialist, we hold that William Harris was a teacher and that he received teacher tenure in 1976.

By exempting specialists from teacher tenure in 1979, the Legislature restricted the class of persons protected by tenure under section 20-4-203, MCA. In doing so, however, it did not affect tenure earned before 1979.

Regarding the issues of dismissal procedures and damages, we note that this case was submitted to the County and State Superintendents and to the District Court on the parties' Stipulation of Facts and attached exhibits. Harris' Notice of Appeal to the County Superintendent and his Petition for Review by the District Court requested reinstatement with back pay. Neither the County Superintendent nor the OPI addressed the issues of dismissal procedures and damages. The District Court, having found that Harris was a tenured teacher, determined that section 20-4-204, MCA applied. The Court reinstated respondent with back pay because the Board had failed to follow the statutory

procedures for termination of a tenured teacher. The District Court's order exceeds the scope of the State Superintendent's judgment.

Yanzick v. School Dist. No. 23 (Mont. 1982), 641 P.2d 431, 436-39, 39 St.Rep. 191, 196-201, sets forth the standards of review to be applied by the County Superintendent, the State Superintendent of Public Instruction, the District Court and this Court. Section 20-4-204, MCA authorizes the County Superintendent to review the Board of Trustees' decision to terminate a teacher's employment. The County Superintendent acts as fact-finder in a trial de novo, as well as furnishing appellate review of the Board's decision. Sections 20-3-210(2) and 2-4-612, MCA. "The statutes do not contain a limitation on the decision-making power of the County Superintendent." Yanzick, 641 P.2d at 438, 39 St.Rep. at 198.

Section 20-3-107, MCA sets forth the essential elements for appeal of the County Superintendent's determination to the State Superintendent of Public Instruction. This section requires the State Superintendent to make a determination based on the record. Section 2-4-623, MCA requires that findings of fact and conclusions of law be stated separately. This section applies to the State, as well as to the County Superintendent. Yanzick, 641 P.2d at 438, 39 St.Rep. at 199. We note that the State Superintendent's decision in this matter does not comply with this statutory requirement.

The District Court likewise is subject to the provisions of the Montana Administrative Procedure Act in its judicial review of contested cases. The standard of review by the District Court is set forth in section 2-4-704, MCA:

"(1) The review shall be conducted by the court without a jury and shall be confined to the record.

11

. . . The court, upon request, shall hear oral argument and receive written briefs.

"(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
"(a) in violation of constitutional or statutory provisions;
"(b) in excess of the statutory authority of the agency;
"(c) made upon unlawful procedure;
"(d) affected by other error of law;
"(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
"(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
"(g) because findings of fact, upon issues essential to the decision, were not made although requested."

The District Court, in effect, sits as a lower appellate tribunal, basing its conclusions on a review of the printed record. Yanzick, 641 P.2d at 438-39, 39 St.Rep. at 200. The court can review only those issues determined by the State Superintendent, which in turn reviews only those issues determined by the County Superintendent.

The County Superintendent concluded that Harris "was not a teacher," but did not address the issues of termination procedures or damages. The State Superintendent affirmed the County Superintendent's decision. The District Court's findings and conclusions are supported by the record, but go beyond those of the superintendents. The District Court should properly have reversed the superintendents on the issue of teacher tenure and remanded the cause for negotiation between Mr. Harris and the School District and, if unsuccessful, for determination of the remaining issues by the County Superintendent.

We note that 2½ years have passed since Mr. Harris first challenged the Board of Trustees' decision to terminate his employment. Although Mr. Harris did not receive a hearing before the Board, as Mr. Yanzick did, we believe the suggestion made to the legislature in Yanzick applies here as well.

> "We suggest that the initial hearings followed by three separate and in part duplicating appeals does not appear to be judicial economy or an appropriate manner of disposing of a contested case under MAPA without delay. We suggest this is an appropriate area for legislative consideration." 641 P.2d at 439, 39 St.Rep. at 201.

Here, the delay will exceed that in Yanzick because the School Board must now make an initial determination as to the propriety of the discharge procedures used and a proper award to respondent.

We remand to the District Court with instructions to remand this cause to the County Superintendent for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices