NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

PHOENIX LAW ENFORCEMENT ASSOCIATION, et al.,
*Plaintiffs/Appellants*,

*v.*

CITY OF PHOENIX et al., *Defendants/Appellees*.

No. 1 CA-CV 23-0454
FILED 08-27-2024

---

Appeal from the Superior Court in Maricopa County
No. CV2014-008711
CV2014-009114
CV2015-007714
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

---

COUNSEL

Napier, Baillie, Wilson Bacon & Tallone PC, Phoenix
By Eric R. Wilson (argued), Michael Napier, Cassidy L. Bacon, Juliana B. Tallone
*Counsel for Plaintiffs/Appellants Phoenix Law Enforcement Association*

Yen Pilch Robaina & Kresin, PLC, Phoenix
By Caroline A. Pilch (argued), Robert E. Yen
*Counsel for Plaintiffs/Appellants Theresa Clark, et al*.

Sherman & Howard L.L.C., Phoenix
By Matthew A. Hesketh (argued), John A. Doran, Carli J. Simkin
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Vice Chief Judge Randall M. Howe joined.

---

**F U R U Y A**, Judge:

¶1        Plaintiffs Phoenix Law Enforcement Association ("PLEA plaintiffs"), et al., and plaintiffs Theresa Clark ("Clark plaintiffs"), et al., (collectively "Plaintiffs") appeal from the superior court's grant of summary judgment in favor of the City of Phoenix ("the City"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Phoenix police officers are members of the Public Safety Personnel Retirement System ("PSPRS"). Under Arizona Revised Statute ("A.R.S.") § 38-842, a retiree's benefits are calculated in accordance with the "average monthly benefit compensation." The membership of the Phoenix Law Enforcement Association ("PLEA") consists of Phoenix police officers who have not been promoted to the rank of sergeant. Members of the Phoenix Police Sergeants and Lieutenants Association ("PPSLA") are supervisory officers.

¶3        The City and its officers engage in collective bargaining regarding employment and compensation. Phoenix City Code ("P.C.C.") §§ 2-209 to -235. Agreements with PLEA and PPSLA are delineated in a Memorandum of Understanding ("MOU") and a Memorandum of Agreement ("MOA") respectively. We refer to these agreements together as Collective Bargaining Agreements ("CBAs"). These CBAs are subject to periodic renegotiation between the City and the unions. *See* P.C.C. §§ 2-209(4), -210(11), -223, -229. If the City and unions fail to reach an agreement during such negotiations, the City Council or Manager may impose terms based on "the interest of the public employees, public employer, and the public." P.C.C. § 2-219(J), (K). Further, each provision in a CBA constitutes a "mandatory subject of bargaining" and is subject to change or elimination during the collective bargaining process. P.C.C. § 2-215(A).

¶4        Historically, the CBAs contained wage enhancement provisions that allowed employees to increase their wages by converting vacation time, sick time, and uniform allowances into additional base

salary, provided employees satisfied certain threshold requirements. An employee could elect to participate in any or all the wage enhancement provisions by submitting an election form. Each subsequent CBA renewed these provisions until 2014.

¶5            As relevant here, the 2012–2014 CBAs[1] also included wage enhancement provisions as follows:

§ 3-1D, regarding uniform allowances:

> [A] unit member may elect to have their basic annual uniform allowance converted to a bi-weekly payment for a consecutive three year period. . . . The consecutive 3 year period may be stopped and restarted one time for an additional three (3) year period up to a maximum total of six (6) years.

§ 3-4(B)(5), regarding sick leave benefits:

> Once the employee elects to exercise this benefit, it must continue for the full three (3) consecutive year period. The employee may stop and restart this benefit one time without further qualification up to a maximum of a total of six (6) years.

§ 5-5(L), regarding vacation leave:

> Once the election to exercise this benefit is made, it must continue for the full three consecutive-year period. The unit member may receive a one-time, one-year extension to the three-year period."

¶6            In 2014, before the 2012–2014 CBAs expired, the City began negotiating with PLEA and PPSLA on the terms of the next contracts. When negotiations failed to achieve a final agreement, the City imposed terms of employment that did not include any wage enhancement provisions. The PLEA plaintiffs and the Clark plaintiffs each sued the City to reinstate the wage enhancement provisions, arguing breach of contract and promissory estoppel. In 2016, Plaintiffs' claims were consolidated and later successfully obtained class certification. *Phoenix L. Enf't Ass'n v. City of Phoenix*, No. 1

---

[1]      The wage enhancement provisions in the MOU contain substantially similar language to the MOA regarding the most relevant issue in this case, namely that any election "must continue for the full three-year period."

CA-CV 19-0813, 2021 WL 1575782, at *2 ¶ 10 (Ariz. App. Apr. 22, 2021) (mem. decision).

¶7 Thereafter, the City moved for summary judgment on all claims. The PLEA plaintiffs moved for partial summary judgment on the breach of contract claim. The superior court granted the City summary judgment on all claims and denied the PLEA plaintiffs' motion. The court awarded the City $220,000 of attorneys' fees from the PLEA plaintiffs and $180,000 of attorneys' fees from the Clark plaintiffs. The awards reflected more than a 25% reduction in the amounts the City requested.

¶8 We have jurisdiction over Plaintiffs' timely appeal under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.01(A)(1), -2101(A)(1).

## DISCUSSION

¶9 We review the superior court's grant of summary judgment in favor of the City de novo, viewing the facts in the light most favorable to Plaintiffs. *See Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373 ¶ 13 (2021). "The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). Summary judgment must be granted if the facts produced in support of the non-movant's claim "have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim." *Rosenberg v. Sanders*, 256 Ariz. 328, 332–33 ¶ 23 (2023) (quoting *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990)).

## I. The City Did Not Breach the 2012–2014 CBAs by Eliminating the Wage Enhancement Provisions After Those CBAs Expired.

¶10 Plaintiffs argue the City breached the CBAs by eliminating wage enhancement provisions for employees who made a timely election during the 2012–2014 period.

### A. We Are Not Bound by Previous Decisions and Rulings Because They Were Not Decided on the Merits.

¶11 As a preliminary matter, Plaintiffs argue that granting the City summary judgment contradicts previous judgments on the pleadings and this court's decision on class certification. They contend those decisions

relied on the same essential facts and no new circumstance or change in the law occurred since then.

¶12        Courts are not bound by a prior decision if it "did not actually decide the issue." *Flood Control Dist. v. Paloma Inv. Ltd. P'ship*, 230 Ariz. 29, 40 ¶ 31 (App. 2012) (quotation omitted); *see also Quinn v. Cardenas*, 256 Ariz. 77, 82–83 ¶ 18 (App. 2023) (explaining final judgment is reviewed notwithstanding any contrary previous ruling). A motion for judgment on the pleadings "tests the sufficiency of the complaint," and the allegations must be taken as true. *Garibay v. Johnson in & for Cnty. of Pima*, 257 Ariz. 91, 95 ¶ 5 (App. 2024) (quoting *Giles v. Hill Lewis Marce*, 195 Ariz. 358, 359 ¶ 2 (App. 1999)). Class certification requires analysis of the individuals of the proposed class, the types of claims, the relationship between the relief sought and the proposed class, and procedural concerns—not the merits of the case. *See generally* Ariz. R. Civ. P. 23. Summary judgment, however, requires finding "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).

¶13        Therefore, the standard for surviving summary judgment is different than judgment on the pleadings or class certification. *Compare* Ariz. R. Civ. P. 12(b) *with* 56(a) *and* 23. Because prior decisions rendered in the history of this consolidated case did not "actually decide the issue" on the merits, they have no bearing on whether summary judgment was proper. *See Flood Control Dist.*, 230 Ariz. at 40 ¶ 31.

### B.        The Wage Enhancement Provisions Expired with the 2012–2014 CBAs.

¶14        Plaintiffs argue the wage enhancement provisions survived the expiration of the CBAs because the parties' intent and principles of contract interpretation suggest those provisions were intended to outlast the main agreements.

¶15        We interpret collective bargaining agreements under ordinary contract principles. *See M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015); *see also Cheatham v. DiCiccio*, 240 Ariz. 314, 323 ¶ 38 (2016) (explaining collective bargaining agreements are like other contracts). Contract interpretation is a question of law we review de novo. *Benson v. Casa De Capri Enters., LLC*, 252 Ariz. 303, 306 ¶ 9 (2022). When interpreting contract terms, we seek to identify and enforce the parties' intent. *Terrell v. Torres*, 248 Ariz. 47, 49 ¶ 14 (2020). In so doing, we construe the provisions "according to their plain and ordinary meaning." *First Am.*

*Title Ins. Co. v. Johnson Bank*, 239 Ariz. 348, 350 ¶ 8 (2016). In approaching the text, "we attempt to reconcile and give effect to all terms of the contract to avoid any term being rendered superfluous." *Terrell*, 248 Ariz. at 49 ¶ 14.

### 1. The Durational Clauses of the CBAs Apply to the Wage Enhancement Provisions Absent a Clear and Explicit Exception.

**¶16** "[C]ontractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 207 (1991). Further, employees do not retain a right to future benefits in the absence of a formal written contract to that effect. *See Abbott v. City of Tempe*, 129 Ariz. 273, 278 (App. 1981) (permitting city to limit prospective holiday and vacation benefits not yet earned); *Bennett ex rel. Ariz. State Pers. Comm'n v. Beard*, 27 Ariz. App. 534, 536–37 (App. 1976) (permitting state to modify future employment benefits). Thus, continuing any benefits beyond the extent of the durational clause of a collective bargaining agreement requires clear and explicit language establishing that intent. *See Tackett*, 574 U.S. at 442; *see also CNH Industrial N.V. v. Reese*, 583 U.S. 133, 140 (2018) (requiring specific language intended to override durational clause).

**¶17** Though not aligned on all facts, *Paczosa v. Cartwright Elementary School* is instructive. 222 Ariz. 73 (App. 2009). The contracts at issue in *Paczosa* controlled all aspects of the employees' employment relationship, while the CBAs here set only compensation and benefits. But this difference does not make *Paczosa* distinguishable from this case. Here, as in *Paczosa*, the main issue is whether benefit provisions that specify a term of applicability appearing to conflict with general durational clauses outlast expiration of the contract. *See id.* at 76–77 ¶¶ 14–17. In *Paczosa*, certain employment contracts—with a stated one-year duration—allowed employees to "choose to receive" certain benefits "over the pay periods of one, two, or three contract years immediately prior to termination of employment." *Id.* at 75 ¶¶ 3–4. The employees sent form notices to the employer stating their election to receive these benefits under the employment contract for the three-year period. *Id.* at 75, 78 ¶¶ 5, 23. But when the original contract terminated, the employer altered the benefits offered and presented the new, amended employment contract to the employees. *Id.* at 75 ¶¶ 6–7. The employees refused to sign the new employment contracts, asserting instead that they would work under the expired contract's terms. *Id.* at 76 ¶ 8. As relevant to this appeal, the employees argued that their election to receive benefits for the three-year term under their prior employment contract (1) prohibited the employer

from changing the benefits terms and (2) operated to extend the life of the prior contract to cover at least the three years of their timely benefits election under that document. *Id.* at 77 ¶¶ 15, 18.

**¶18** The *Paczosa* court declined to construe the three-year benefits election as a separate contractual right that prevented the employer from changing those benefits. *Id.* at 77 ¶ 17. It reasoned that the employees had no legitimate expectation of employment beyond the one-year duration of the old employment contract because the contract itself was expressly limited to one-year and statutes precluded a longer contract term. *Id.* at 77 ¶¶ 15–16. Nor did the employees' election extend the one-year employment contract into a three-year contract because the language of the contract did not clearly admit of such an interpretation and, again, the law did not permit such an extension. *Id.* at 78 ¶¶ 19–24.

**¶19** Here, the 2012–2014 CBAs each contained a two-year durational clause that expired at the beginning of July 2014. To that end, all provisions were only "binding upon the parties for the term thereof." Like the employees in *Paczosa*, Plaintiffs signed election forms to participate in a benefits program at a date beyond the expiration of the CBAs. And as in *Paczosa*, Plaintiffs assert the three-year election language extends the wage enhancement provisions beyond the expiration of the CBAs. But unless clear and explicit contract language and statutes provide otherwise, a general durational limitation in an employment contract controls, even when the contract also provides an election of benefits covering a period exceeding the employment contract's term. *Id.* at 77–78 ¶¶ 15–24.

**¶20** Plaintiffs' counter by pointing to the CBAs' phrase "must continue for the full three (3) consecutive year period," as the clause that vests their benefits election beyond the termination of the CBAs. But the superior court correctly interpreted this language to merely indicate that an employee cannot opt in and out of the wage enhancement elections in some other fashion. Although electing employees are committed to their election for at least a period of three years, their election does not guarantee benefits will survive the duration of the CBAs. Surrounding language provides context supporting this interpretation. This same section of the CBAs state that an employee "may stop and re-start this benefit one time without further qualification up to a maximum of a total of six (6) years." In other words, the three-year election language defines the duration of the employee's election while the CBA remains in force to provide such benefits. It does not define the duration of the CBAs themselves. *See id.* at 78 ¶ 21 (observing that provision allowing participants to receive benefits for "one, two, or three contract years" does not bestow "one, two, or three-

year contracts"). Because the CBAs do not contain any clear and express language providing that the benefits will survive the two-year durational clause of the CBAs, those provisions are limited to two years. *See Tackett*, 574 U.S. at 435; *Reese*, 583 U.S. at 140.

**¶21** Plaintiffs argue *Paczosa* is distinguishable because those contracts specified the benefits were available "for the fiscal year this Contract is in effect." But that language parallels language in the CBAs—that provisions were "binding upon the parties *for the term thereof.*" (Emphasis added.) The Clark Plaintiffs argue the employees in *Paczosa* had one-year contracts subject to annual renewal by statute. However, Plaintiffs' contracts were also not indefinite, and all terms were subject to renegotiation every three years. P.C.C. §§ 2-215(B), (C), -218(F), (G).

**¶22** Applying *Paczosa's* reasoning, we conclude the wage enhancement provisions at issue here do not confer rights beyond the CBAs' expiration. Therefore, the two-year general durational limits of the CBAs apply to the wage enhancement provisions and the elections of benefits were effective only for the term of the CBAs.

### 2. The Parties Did Not Intend for Wage Enhancements to Survive Beyond the 2012–2014 CBAs' Expiration.

**¶23** Plaintiffs further argue the wage enhancement provisions' language indicates that the parties intended the election to receive such benefits to extend beyond the CBAs' expiration. Not so.

**¶24** All provisions of the CBAs—including benefits—were mandatory subjects of bargaining, with every provision eligible to be changed or eliminated. *See* P.C.C. § 2-215. After the CBAs expired, the parties could not agree during renegotiation and the City's terms exclusively governed Plaintiffs' employment and these new terms eliminated the wage enhancement provisions of the CBAs, as was the City's right under the City's code. *See* P.C.C. § 2-219(J), (K). Because applicable law subjects the CBAs to prospective amendment or elimination, rights for future benefits derived from those transitory documents cannot be vested. *See Paczosa*, 244 Ariz. at 77 ¶ 16 (citing 11 *Williston on Contracts* § 30:19, at 206, 211 (4th ed. 1999) ("[C]ontractual language must be interpreted in light of existing law, the provisions of which are regarded as implied terms of the contract, regardless of whether the agreement refers to the governing law.")). It is unreasonable to expect that benefits for future compensation under those CBAs continue beyond the CBAs' expiration merely by electing to receive them during the CBAs' active term. *See id.* Thus, the language

8

regarding the election to utilize the wage enhancement provisions does not indicate intent to confer ongoing vested rights beyond the expiration of the CBAs.

¶25        Nevertheless, the PLEA Plaintiffs contend "the parties intended the promise to survive" because the wage enhancement provisions were "structured for three years . . . for the purpose of impacting an officer's 'high three'[2] beyond the MOU." Even assuming the truth of this assertion, it does not prove the parties intended for the provisions to survive the CBAs' expiration. Moreover, the parties could not lawfully agree to allow the provisions to survive regardless of the effect on the "high three" because doing so would obstruct the future renegotiation of mandatory subjects or fix the terms of future CBAs, all contrary to the requirements of statute. P.C.C. § 2-215.

¶26        The PLEA plaintiffs also contend the City "removed any uncertainty as to [its] intent to be bound for a term beyond the MOU" by accepting election forms and paying wage enhancements. We disagree. The City's actions show it performed as obligated during the term of the CBAs, but do not prove the City's purported intent to be bound beyond the expiration in violation of the City's code.

¶27        Finally, the Clark plaintiffs contend the parties must have intended wage enhancement to survive because those provisions were historically included in previous CBAs. Even so, that fact alone does not indicate intent to be bound in the future, such that the right becomes presently vested vis-à-vis future agreements. Though many provisions were doubtlessly repeated across multiple CBAs, all are still subject to renegotiation and change during each negotiation cycle. *See* P.C.C. § 2-215; *see also Gilmore v. Gallego*, No. CV-23-0130-PR, 2024 WL 3590669, at *4 ¶ 22 (Ariz. July 31, 2024) (observing that employees do not have a right to hypothetical future benefits "just because [an] older MOU provided for them) (citing *Paczosa*, 222 Ariz. at 77 ¶ 15); *Am. Fed'n of State Cnty. & Mun. Emps. AFL-CIO Loc. 2384 v. City of Phoenix*, 249 Ariz. 105, 111–113 ¶¶ 26–32 (2020) (City's prior promises and longtime practices did not confer vested rights) ("*AFSCME*").

¶28        Therefore, the language of the CBAs does not establish intent to vest in employees a right to wage enhancements after the CBAs expired.

---

2        "High three" refers to the highest average of 36 consecutive months of salary within the last 10 years of the officer's service for purposes of retirement pension calculations.

Instead, we agree with the superior court's finding that the wage enhancement benefits expired with the CBAs that authorized them.

### C.     The Phoenix City Charter and Code Preclude any Continuing Obligation to Pay Wage Enhancements.

**¶29**          Our supreme court has recognized that a city charter effectively constitutes a "local constitution." *McMichael-Gombar v. Phoenix Civ. Serv. Bd.*, 256 Ariz. 312, 316 ¶ 9 (2023) (quoting *Piccioli v. City of Phoenix*, 249 Ariz. 113, 118 ¶ 15 (2020)). Further, the City is not bound by alleged contracts, promises, or longstanding practices that conflict with its governing laws. *See AFSCME*, 249 Ariz. at 107, 112 ¶ 28 (explaining a city cannot act or make promises in violation of its charter). Thus, courts have "refused to hold binding on the City a contract that was entered into in a manner inconsistent with charter provisions." *Johnson Int'l, Inc. v. City of Phoenix*, 192 Ariz. 466, 471 ¶ 28 (App. 1998) (citing *Barron G. Collier, Inc. v. Paddock*, 37 Ariz. 194, 204 (1930)).

**¶30**          The City's charter vests its officials with the authority to set employee compensation unless otherwise established by an MOU "which does not exceed three years in duration." *See* Phoenix City Charter, Chapter III, § 9(A). The City's code similarly indicates that an MOU or MOA may not exceed three years. *See* P.C.C. §§ 2-215(B), -232(D). In addition, the City's charter prohibits the City from entering into any agreement that precludes the City's officials from modifying employment compensation. *See* Phoenix City Charter, Chapter XXV, § 14(F). If the wage enhancement provisions were to survive beyond the duration of the CBAs, such an agreement would violate the City's charter and code by exceeding three years and limiting the City's power to modify compensation.

**¶31**          The PLEA plaintiffs contend there "was no violation" by "limiting the duration to two consecutive three-year periods," because they have vested rights for up to an additional six years. Plaintiffs rely on *Pointe Resorts, Inc. v. Culbertson*, 158 Ariz. 137 (1988), claiming the City's charter allows other methods of contracting. In *Pointe Resorts*, the City entered a contract that complied with the charter when it was made. 158 Ariz. at 138–40, 141–43 (Charter "expressly allowed [Council] to enter into [certain] trade agreements"). The court addressed whether a contract that was valid when entered was later invalidated by a new law—it did not suggest unlawful contracts are enforceable. *Id.* Here, by contrast, Plaintiffs failed to identify any alternative methods of contract formation that the City's charter or code provided. To the contrary, the CBAs specify they are subject

to the Phoenix City Charter and Code, and they must be interpreted in accordance therewith.

**¶32** The City's charter and code preclude any obligation to pay wage enhancement beyond the CBAs' expiration.

> **D. The Wage Enhancement Provisions Are Not Retirement Benefits and Plaintiffs Did Not Have Vested Rights in Those Provisions.**

**¶33** Plaintiffs argue they had vested rights in the wage enhancements because they met the eligibility requirements and submitted election forms to the City before the CBAs expired. They also assert the wage enhancements are retirement benefits because the City always treated them as pensionable compensation.

> **1. The Wage Enhancement Provisions Are Not Retirement Benefits.**

**¶34** The Pension Clause of the Arizona Constitution protects "public retirement benefits." *Piccioli*, 249 Ariz. at 117 ¶ 11; *see* Ariz. Const. art. 29, § 1(D). This protection covers the codified retirement plan and the statutory formula for calculating retirement system benefits. *Id.* at 117 ¶ 12; *Fields v. Elected Offs.' Ret. Plan*, 234 Ariz. 214, 221 ¶ 33 (2014). However, it does not protect purported benefits outside the codified plan. *See AFSCME*, 249 Ariz. at 107–08 ¶¶ 8-9 (rejecting claim that was not grounded in codified retirement plan because the law "only protect[s] whatever pension rights [members] ha[ve] under applicable law"); *Cross v. Elected Offs. Ret. Plan*, 234 Ariz. 595, 599–600 ¶¶ 8–9, 13 (App. 2014) ("Whatever contract existed between [member] and the [retirement] Plan, however, guaranteed him only the pension due under the law, not something more.").

**¶35** In *Piccioli* and *AFSCME*, our supreme court held the City did not impair retirement benefits by terminating compensation programs that had no basis in the codified retirement plan. *See Piccioli*, 249 Ariz. at 119 ¶ 23 ("Petitioners do not have contractual rights independent of the Plan."); *AFSCME*, 249 Ariz. at 112–113 ¶¶ 31–32 (explaining City's prior promises and longtime practices did not form a pension contract independent of codified plan). Here, PSPRS is a statewide retirement system and Arizona statutes define the PSPRS benefits and the formula for calculating them. *See* A.R.S. § 38-845. Because the wage enhancement provisions are specifically excluded from the definition of compensation in the PSPRS statutes, the elimination of wage enhancement benefits did not alter anything in the PSPRS statutes, the statutory formula, or the way PSPRS benefits are

calculated. *Id.*; A.R.S. § 38-842(12).[3] Moreover, the City does not have authority to modify or supplement the PSPRS statutes or the benefits under them. And the 2012–2014 MOA states:

> Retirement benefits are governed by the provision of State law, as set forth in the Arizona Revised Statutes, and are not subject to the provisions of this Agreement. The Arizona Revised Statutes should be reviewed for the specific retirement benefits provided to police officers.

Thus, wage enhancements cannot be treated as retirement benefits because doing so would conflict with PSPRS's purpose to "provide a uniform, consistent and equitable statewide program." A.R.S. § 38-841(B); *cf. AFSCME*, 249 Ariz. at 111 ¶ 23 ("[N]o logical reason exists to conclude that voters intended to grant a lifetime windfall to members who refrained from taking vacation. . . . [U]sing those payouts to increase pension benefits would result in unequal treatment among members.").

**¶36** Further, "the pension protection clause protects the statutory formula, not the inputs from the employment relationship." *Pisani v. City of Springfield*, 73 N.E.3d 129, 138–39 ¶ 31 (Ill. App. Ct. 2017).[4] Even though elimination of an input may affect the amount of the pension, such is not a diminishment or impairment of pension benefits within the meaning of the pension protection clause. *Id.* ("The pension contract was the formula, with its variables, and no matter what numbers were plugged into the formula, it—and therefore the pension contract—remained the same."). The law does not treat such benefits as vested merely because they could affect pension calculations. *See id.* at 136–39 ¶¶ 26–31. Here, though the wage enhancements may affect pension calculations if used during the "high three," that circumstance alone does not qualify them as retirement benefits.

**¶37** The wage enhancement provisions cannot be classified as retirement system benefits because the wage enhancement provisions at issue here are not included in the statutory scheme of the PSPRS. *See* A.R.S. § 38-841. Therefore, the elimination of the wage enhancements did nothing

---

[3]    Though this statute has been amended many times, the exclusion was in place as of the time that the parties agreed to the CBAs.

[4]    The Arizona Supreme Court has recognized that Arizona, Illinois, and New York share similar protections with respect to public pension benefits. *See Fields*, 234 Ariz. at 220.

to modify the statutory formula for any such payments. *See Piccioli*, 249 Ariz. at 118 ¶ 18; *AFSCME*, 249 Ariz. at 110 ¶ 19. Because the PSPRS statutory scheme does not include wage enhancements, their elimination did not implicate the Pension Clause. *See* Ariz. Const. art. 29 § 1; *AFSCME*, 249 Ariz. at 107 ¶ 8; *Cross*, 234 Ariz. at 600 ¶ 13.

### 2. Plaintiffs Did Not Have Vested Rights in the Wage Enhancement Provisions.

¶38         Under Arizona law, employees do not retain any vested rights in future compensation unless a contract expressly indicates that right and/or the benefits were earned by services previously rendered. *See Gilmore*, 2024 WL 3590669, at *4 ¶ 22; *Abbott*, 129 Ariz. at 279 (right to merit increases only vests upon performance of the required services); *Rengstorf v. City of Glendale*, 14 Ariz. App. 4, 6 (App. 1971) (firefighters do not retain vested right in future pay increases); *Smith v. City of Phoenix*, 175 Ariz. 509, 514 (App. 1992) (city permitted to modify city code with respect to compensation of judges).

¶39         Plaintiffs contend they acquired vested rights to the wage enhancement benefits at issue by (1) making an election that gave them a right to those benefits, pursuant to the CBAs, and (2) meeting the eligibility criteria. Plaintiffs cite several cases to support their claim. But these cases show that benefits do not extend beyond the term of a contract or future benefits unless expressly stated within the contract. *See Paczosa*, 222 Ariz. at 77 ¶¶ 15–17 (no right to benefits after contracts expired); *Abbott*, 129 Ariz. at 278–79 (no vesting of future contract rights was intended where compensation is subject to change); *Bennett*, 27 Ariz. App. at 537 (public entity does not impair vested rights by modifying future compensation benefits).

¶40         Plaintiffs also rely on *Godbey v. Roosevelt School District No. 66*, 131 Ariz. 13 (App. 1981), arguing benefits vest when employees meet eligibility requirements and cannot be retroactively modified by the employer. In *Godbey*, a school district sought to modify the employees' sick leave benefits. 131 Ariz. at 14–15, 20–21. The court found employees acquired vested rights to sick leave as they worked through the school year as the condition of service. *Id.* at 21. Thus, the modification was an improper retroactive adjustment to benefits that had vested based on past services. *Id.* at 20–21. Here, by contrast, the City prospectively eliminated the wage enhancement benefits after the CBAs expired. It did not make any retroactive changes to compensation already earned.

¶41        Thus, Plaintiffs have not established a vested right in the wage enhancement provisions.

### E.     The Election Forms Are Not Individual Contracts but Administrative Documents.

¶42        Plaintiffs further argue the forms the employees signed and submitted to obtain the wage enhancements constitute valid and enforceable contracts for wage enhancement benefits that persist after the underlying CBAs expired. The Clark plaintiffs also assert the Contracts Clause of the Arizona Constitution prohibits the City from unilaterally modifying the election forms as contracts.

¶43        "An enforceable contract requires an offer, acceptance, consideration, and sufficient specification of terms." *See State Farm Mut. Auto. Ins. Co. v. Frank*, 257 Ariz. 228, 334 ¶ 21 (App. 2024). Here, the election forms are not contracts. Nor do they purport to be contracts. To begin, the CBAs are fully integrated, indicating no other documents affect the terms of employment. Moreover, the City's charter "sets forth prerequisites to creating contractual obligations on the City." *Johnson Int'l*, 192 Ariz. at 471 n.4. "All contracts shall be drawn under the supervision of the City Attorney, must be in writing, executed in the name of the City of Phoenix by the Manager." Phoenix City Charter, Chapter XIX, § 1. The City's code also requires all agreements regarding wages to be in the CBAs signed by the City's authorized representatives and approved by the Council or Manager. P.C.C. §§ 2-209(4), -215(c), -223, -232.

¶44        Here, the election forms do not meet these requirements. As discussed above, Plaintiffs' reliance on *Pointe Resorts* is misplaced because the City's charter and code do not allow alternative methods of contracting as an exception to the CBAs. 158 Ariz. at 141–43. Therefore, the election forms are not contracts. *See State Farm Mut. Auto. Ins. Co.*, 257 Ariz. at 334 ¶ 21. Rather, they are administrative documents, lacking the components of a contract, and do not create mutual obligations. *See Paczosa*, 222 Ariz. at 77 ¶ 23 (an application for benefits is not an enforceable contract when it "contains nothing to support the claim that it functioned as an 'acceptance' of an 'offer'"); *see also Cross*, 234 Ariz. at 600 ¶ 13 ("No new contract was formed by the administrative step of completing the retirement paperwork.").

¶45        Further, Plaintiffs have not set forth a supportable claim under the Contracts Clause of the Arizona Constitution. *See* Ariz. Const. art. 2 § 25. A Contracts Clause violation occurs only when evidence shows that

a governmental entity has acted in a manner that impairs existing contract obligations. *See Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 242 Ariz. 108, 116 ¶ 41 (2017). Because the wage enhancement provisions expired with the 2012–2014 CBAs, the Contracts Clause is not implicated. *Id.*

**¶46**      Therefore, the superior court did not err in granting the City summary judgment on Plaintiffs' claims for breach of contract. *See Rosenberg*, 256 Ariz. at 332–33 ¶ 23 (2023).

## II.    Plaintiffs' Promissory Estoppel Claim Fails.

**¶47**      Plaintiffs argue the City is liable for promissory estoppel because they reasonably relied on the wage enhancement provisions. Promissory estoppel is not a theory of contract liability, but rather an alternative theory of liability when no contract exists between the parties. *See State ex rel. Romley v. Gaines*, 205 Ariz. 138, 143 ¶ 15 (App. 2003). An implied contract cannot exist when the parties have an express contract covering the same subject matter. *AFSCME*, 249 Ariz. at 112 ¶ 28 (citing *Chanay v. Chittenden*, 115 Ariz. 32, 35 (1977)).

**¶48**      Here, the parties had an express contract. The CBAs exclusively governed the parties' contractual relationship and they contained express integration clauses. Plaintiffs' promissory estoppel claims are based on the wage enhancement provisions of the CBAs, breach of which they have failed to prove. Therefore, Plaintiffs' promissory estoppel claim fails. *See Chanay*, 115 Ariz. at 35; *AFSCME*, 249 Ariz. at 112 ¶ 28; *Johnson Int'l*, 192 Ariz. at 474 ¶ 49. Plaintiffs have thus shown no error.

## III.    The Clark Plaintiffs' Remaining Claims Do Not Prevail.

**¶49**      The Clark plaintiffs argue the City failed to pay wages under the wage enhancement clause. Because the contract was not breached, the Clark plaintiffs have not suffered any lost wages as a result of the City's elimination of the wage enhancement provisions after the CBAs expired. When the wage enhancement provisions were eliminated, the City modified the sick leave and vacation provisions so the payments would be made in lump sum. Accordingly, we conclude the Clark plaintiffs' claim for lost wages fails.

**¶50**      The Clark plaintiffs further contend they are entitled to equitable/mandamus relief to preserve their entitlement to wage enhancements. Given our determination that the wage enhancements were lawfully eliminated upon the expiration of the 2012–2014 CBAs, the Clark

plaintiffs have no legal or factual basis to support these claims for equitable relief. *See Ponderosa Fire Dist. v. Coconino Cnty.*, 235 Ariz. 597, 601–02 ¶ 19 (App. 2014) (mandamus may only compel a "purely ministerial" duty which leaves absolutely no discretion to the public official or board).

**IV.** **The Court Did Not Abuse Its Discretion by Awarding Attorneys' Fees to the City.**

**¶51** We review the award of attorneys' fees for an abuse of discretion. *Peterson v. City of Surprise*, 244 Ariz. 247, 253 ¶ 25 (App. 2018). We will uphold the award "as long as the record reflects a reasonable basis for the award"; the court need not "set forth a detailed factual basis for a fee award." *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 267 ¶ 25 (App. 2004). A court's decision whether to award fees under A.R.S. § 12-341.01(A) is highly discretionary. *Hall v. Read Devel., Inc.*, 229 Ariz. 277, 279 ¶ 8 (App. 2012).

**¶52** "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A). To determine whether to award fees under A.R.S. § 12-341.01(A), courts should consider the following "*Warner* factors": (1) the merits of the unsuccessful party's claims and defenses; (2) "whether the parties could have avoided or settled the litigation and whether 'the successful party's efforts were completely superfluous in achieving the result'"; (3) whether the fee award will cause extreme hardship for the paying party; (4) "whether the successful party prevailed on all relief sought"; (5) the novelty of the issues; (6) whether the claims or defenses are issues of first impression in Arizona; and (7) "whether an award of fees would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney fees." *Orfaly*, 209 Ariz. at 265–66 ¶ 19 (quoting *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985)).

**¶53** As a preliminary matter, the court addressed the seventh *Warner* factor and concluded "the Arizona Supreme Court has rejected such an argument in lawsuits (against a governmental entity) that particularly arise from a contractual relationship." The court cited *Piccioli* and *AFSCME*. The Clark plaintiffs argue *Piccioli* and *AFSCME* do not control because those cases did not alter the seventh *Warner* factor, directing courts to "consider whether the award in any particular case would discourage other parties with tenable claims or defenses from litigating or defending

legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees." *Warner*, 143 Ariz. at 570.

**¶54** The city-employee plaintiffs in *Piccioli* and *AFSCME* raised contract and constitutional claims regarding their employment contracts. *Piccioli*, 249 Ariz. at 116 ¶ 7; *AFSCME*, 249 Ariz. at 107 ¶ 5. In those cases, our supreme court awarded attorneys' fees to the employer-cities because the plaintiffs brought claims "as parties to a contract rather than as aggrieved citizens." *Piccioli*, 249 Ariz. at 119 ¶ 24; *AFSCME*, 249 Ariz. at 113 ¶ 33. Given this precedent, the superior court did not abuse its discretion in finding that awarding fees in this case would not risk a chilling effect.

**¶55** As to the other *Warner* factors, the court stated it considered all of the *Warner* factors, but detailed only the first four, finding: (1) though not meritorious, Plaintiffs' claims were "brought in good faith" and were not frivolous; (2) no party presented evidence of "significant efforts to resolve this case" without litigation; (3) Plaintiffs did not present any evidence to support their claims of undue hardship; and (4) the City did not request fees on matters for which it did not prevail.

**¶56** Finally, the court explained, "these consolidated lawsuits required the City of Phoenix to defend against a multi-million dollar claim involving hundreds of police officers" and "this complex litigation—stretching over more than 8 ½ years—required the City of Phoenix to expend significant resources in its own defense."

**¶57** The Clark Plaintiffs contend the court abused its discretion because it found three *Warner* factors did not support a fee award. But the court stated it considered all factors and the context of the litigation. Further, the court significantly reduced the award of fees from that which was requested, demonstrating its careful consideration. The record supports the court's findings and conclusions. Therefore, the court did not abuse its broad discretion in awarding reduced fees to the City. *See Hall*, 229 Ariz. at 279 ¶ 8.

## V. Attorneys' Fees and Costs on Appeal

**¶58** On appeal, the parties request an award of their respective attorneys' fees and costs under A.R.S. § 12-341.01 and ARCAP 21. After consideration and in the exercise of our discretion, we decline to award attorneys' fees. We award the City its costs upon compliance with Arizona Rule of Civil Procedure 21.

**CONCLUSION**

¶59        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV